**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| MARY KELLY SUTTON, JOHN HUMISTON, MARY TALLEY BOWDEN, MARK BRODY, RICHARD WILKINSON, PHYSICIANS AND PATIENTS RECLAIMING MEDICINE,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERATION OF STATE MEDICAL BOARDS, INC., KATIE TEMPLETON, KENNETH SIMONS, MEDICAL BOARD OF CALIFORNIA, KIMBERLY KIRCHMEYER, RHODE ISLAND BOARD OF MEDICAL LICENSURE AND DISCIPLINE, NICOLE ALEXANDER-SCOTT, TEXAS MEDICAL BOARD, SHERIF ZAAFRAN, MASSACHUSETTS BOARD OF REGISTRATION IN MEDICINE, JULIAN ROBINSON, NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, ANDREW MERRITT, MEDICAL LICENSING BOARD OF INDIANA, JOHN STROBEL, WASHINGTON MEDICAL COMMISSION, CLAIRE TRESCOTT, CHARITY DEAN,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No.: 4:25-cv-01230-P |

**DEFENDANTS FEDERATION OF STATE MEDICAL BOARDS, INC., KATIE TEMPLETON, AND KENNETH SIMONS'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Pursuant to Local Rule 7.2(f), the undersigned counsel discloses that artificial intelligence was used in the preparation of this document. All legal and factual citations, quotations, paraphrased assertions, and legal analysis have been independently verified for accuracy by human beings before submission to the Court.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....... 1

II. FACTUAL BACKGROUND ....... 3

- A. The FSMB Defendants ....... 3
- B. The Alleged "Censorship" Statements and Policy ....... 4
- C. State Board Investigations into and Discipline of Plaintiffs ....... 5
- D. The Admitted Lack of FSMB Defendant Involvement ....... 6

III. LEGAL STANDARD ....... 7

IV. ARGUMENT ....... 8

- A. Plaintiffs Do Not Plausibly Plead an Agreement to or Willful Joint Participation in a Constitutional Deprivation by the FSMB Defendants (Count II). ....... 8
  - 1. Plaintiffs Fail to Adequately Allege the Existence of an Agreement to Discriminate Against Plaintiffs. ....... 9
  - 2. Plaintiffs Do Not Plead Willful Participation or Joint Activity in Any Particular Disciplinary Decision. ....... 16
- B. Plaintiffs Do Not Plausibly Plead an Actual Constitutional Deprivation. ....... 17
  - 1. Every Complained-of Action Against Plaintiffs Followed State Law. ....... 17
  - 2. Reciprocal Discipline Does Not Plead a Conspiracy or Deprivation by FSMB. ....... 18
  - 3. Plaintiffs Improperly Cloak Professional Misconduct in First Amendment Protections. ....... 20
- C. The FSMB Defendants' Advocacy Is Immune from Section 1983 Conspiracy Liability ....... 21
- D. Dismissal Should Be with Prejudice ....... 24

V. CONCLUSION ....... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7, 16

*Bayou Fleet, Inc. v. Alexander*,
234 F.3d 852 (5th Cir. 2000)....................22, 23, 24

*Bayou Fleet, Inc. v. Alexander*,
68 F.Supp.2d 734 (E.D. La. 1999)....................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*Bevill v. Fletcher*,
26 F.4th 270 (5th Cir. 2022)....................15

*Casaubon v. Texas Mut. Ins. Co.*,
No. 1-19-CV-00617-DII, 2024 WL 5295081 (W.D. Tex. Dec. 5, 2024)....................10, 14, 18

*Cinel v. Connick*,
15 F.3d 1338 (5th Cir. 1994)....................7, 17, 19

*City of Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991)....................23

*Foster v. Jesel*,
164 F.4th 401 (5th Cir. 2026)....................7, 24

*Green v. State Bar of Tex.*,
27 F.3d 1083 (5th Cir. 1994)....................7, 8, 10, 15

*Hernandez v. Causey*,
124 F.4th 325 (5th Cir. 2024)....................13

*Jabary v. City of Allen*,
547 F. App'x 600 (5th Cir. 2013)....................9, 11, 12

*Kitchens v. Nat'l Bd. of Med. Exam'rs*,
No. CV 5:24-151-DCR, 2025 WL 318102 (E.D. Ky. Jan. 28, 2025)....................14

*Lewis v. Law-Yone*,
813 F. Supp. 1247 (N.D. Tex. 1993)....................8

*Lynch v. Cannatella*,
810 F.2d 1363 (5th Cir. 1987) ....................7, 8, 15

*Manistee Town Ctr. v. City of Glendale*,
227 F.3d 1090 (9th Cir. 2000) ....................22

*Montgomery v. Walton*,
759 F. App'x 312 (5th Cir. 2019) ....................12, 16

*Priester v. Lowndes Cnty.*,
354 F.3d 414 (5th Cir. 2004) ....................7, 8, 13

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
620 F.3d 465 (5th Cir. 2010) ....................24

*Selling v. Radford*,
243 U.S. 46 (1917)....................18

*In re Smith*,
123 F. Supp. 2d 351 (N.D. Tex. 2000) ....................18

*Terwilliger v. Reyna*,
4 F.4th 270 (5th Cir. 2021) .................... *passim*

*Todd v. City of Natchitoches, Louisiana*,
238 F. Supp. 2d 793 (W.D. La. 2002)....................17

*United States v. Edwards*,
488 F.2d 1154 (5th Cir. 1974) ....................13

*Veritext Corp. v. Bonin*,
417 F. Supp. 3d 778 (E.D. La. 2019)....................22

*Video Int'l Prod., Inc. v. Warner–Amex Cable Communications, Inc.*,
858 F.2d 1075 (5th Cir.1988) ....................22, 23

**State Cases**

*Day v. Fed'n of State Med. Bds. of the U.S., Inc.*,
579 S.W.3d 810 (Tex. App. 2019)....................14

*Haran v. Bd. of Registration in Med.*,
398 Mass. 571 (1986) ....................18

**Federal Statutes**

42 U.S.C. § 1983.................... *passim*

**State Statutes**

Ind. Code
§ 25-1-9-4(a)(7) ..................................................18
§ 25-22.5-5-2(b) ..................................................18

Mass. Code Regs.
§ 1.03(5)(a)(12) ..................................................18

Mass. Gen. Laws Chapter 112
§§ 5, 61 ..................................................18

N.Y. Educ. Law
§ 6530(9)(d) ..................................................18

Neb. Rev. Stat.
§ 21-1947 ..................................................14

## I. INTRODUCTION

Conclusory assertions of joint action between state actors and private nonprofit associations cannot sustain a conspiracy claim. More is required than ambiguous conduct, parallel lawful action, institutional overlap, or speculation. Courts require specific facts supporting a reasonable inference that the defendants reached an unlawful agreement. Yet that is all Plaintiffs Mary Kelly Sutton, John Humiston, Mary Talley Bowden, Mark Brody, Richard Wilkinson, and Physicians and Patients Reclaiming Medicine (collectively, "Plaintiffs") plead against the Federation of State Medical Boards, Inc. ("FSMB"), Katie Templeton ("Templeton"), and Kenneth Simons ("Simons" and, together with FSMB and Templeton, the "FSMB Defendants").

This case arises from disciplinary actions taken by state medical boards under their own laws and from FSMB's development of nonbinding advisory guidance concerning professional and ethical standards challenged by the convergence of a public health crisis and the use of technologies that allowed physicians to communicate not only to patients, but to the public at large. Consistent with its purpose, FSMB studies regulatory issues, facilitates dialogue among stakeholders, and articulates consensus recommendations for regulators and licensed professionals. Activities consistent with that purpose—and a state medical board's later independent agreement with FSMB's guidance—do not plausibly suggest an unlawful agreement to violate licensees' constitutional rights.

Plaintiffs' First Amended Complaint ("FAC") fails to provide sufficient pleadings to make such a connection, just as their original complaint failed to make plausible that the FSMB Defendants were state actors who had direct responsibility for disciplinary actions taken against the Plaintiffs. Recognizing the true purpose of the FSMB, Plaintiffs dropped the FSMB Defendants from the direct constitutional-deprivation count, stopped pleading that FSMB is a state actor, deleted the allegation that FSMB, Templeton, and Simons "required" any state board to discipline

anyone, and abandoned their retaliation and vagueness counts. Those were not cosmetic edits. They were concessions to the defects the initial motion exposed. What remains is a generalized disagreement with FSMB's advisory policies recast as conspiracy to violate Plaintiffs' Constitutional rights.

That theory fails twice. First, Plaintiffs do not plausibly plead an agreement. The FAC identifies no contract, directive, decision-specific communication, meeting of the minds, or facts showing that any state board surrendered independent judgment to FSMB. Plaintiffs allege only advocacy, influence, institutional overlap, and generalized agreement with policy guidance. Second, Plaintiffs do not plausibly plead an actual constitutional deprivation attributable to the FSMB Defendants. The discipline Plaintiffs challenge was imposed by independent state boards for reasons those boards treated as professional conduct, including vaccine-exemption practices, documentation and informed-consent issues, failure to complete remediation, reciprocal or follow-on discipline, hospital-privileges and disruptive-conduct allegations, and patient-care charges. *See, e.g.*, FAC ¶¶ 370, 391–405, 422, 461, 466–67, 482–83, 515–16, 523.

Allowing vague allegations and attenuated inferences to suffice as a well-pled conspiracy would carry serious consequences. It would expose nonprofit organizations, professional associations, and expert bodies to costly litigation whenever their guidance is considered, cited, or adopted by government actors. It would chill the exchange of professional expertise and consensus-building that informs sound regulatory policymaking. Respect for all viewpoints—those supporting such guidance and those opposing it—requires the serious allegation of conspiracy with state actors to be supported by specific factual allegations beyond disagreement with the guidance itself.

The allegations against the FSMB Defendants are labels, not facts. Plaintiffs say the FSMB Defendants "pressured," "encouraged," "worked with," or "agreed" with state boards, but do not identify who agreed with whom, when, where, by what communication, or to what unlawful object. Plaintiffs retreated to conspiracy because every stronger theory collapsed. The remaining theory collapses too. Because Plaintiffs cannot transform nonbinding public-policy advocacy and independent state-board discipline into a 42 U.S.C. § 1983 ("Section 1983") conspiracy, the Court should dismiss Count II against the FSMB Defendants with prejudice.

## II. FACTUAL BACKGROUND

### A. The FSMB Defendants

FSMB is a private nonprofit association, incorporated in Nebraska, with offices in Texas and Washington, D.C. *See* FAC ¶¶ 69–70. Its members are state, territory, and D.C. agencies empowered by state law to license physicians or discipline medical licensees. *Id.* ¶¶ 71–74. FSMB's mission is to provide services and initiatives that promote patient safety, quality health care, and regulatory best practices. *Cf. id.* ¶ 70. It carries out that mission through internal association governance, including a House of Delegates and Board of Directors. *Id.* ¶¶ 74–81. FSMB also develops model policies and guidance for state medical boards. *Id.* ¶¶ 376, 384. FSMB does not, nor do its policies and guidance alone empower members to, revoke licenses, issue subpoenas, adjudicate charges, or discipline physicians.

Templeton and Simons are alleged to have acted in FSMB roles. Templeton was elected to the FSMB Board of Directors in 2020, chaired the Ethics and Professionalism Committee ("EPC") during 2021 and 2022 while the challenged guidance was developed, and later served as FSMB Board chair in 2024. *Id.* ¶¶ 99–103, 345–46. Simons previously served as chair of the Wisconsin medical board, was elected to the FSMB Board of Directors in 2017, was elected FSMB Board chair in 2020 to serve during 2021, and served as "immediate past chair" in 2022. *Id.* ¶¶ 104–07.

### B. The Alleged "Censorship" Statements and Policy[1]

Plaintiffs challenge two identified FSMB documents. First, on July 29, 2021, FSMB's Board approved a public statement "in response to a dramatic increase in the dissemination of COVID-19 vaccine misinformation and disinformation by physicians and other health care professionals on social media platforms, online and in the media," which Plaintiffs call the "FSMB Censorship Statement." FAC ¶ 346. The statement warned that physicians who "generate and spread COVID-19 vaccine misinformation or disinformation" risk disciplinary action by state medical boards if such statements transcend the ethical and professional responsibility of physicians to share information that is "factual, scientifically grounded and consensus-driven" on matters of public health. *See id.* Second, after Simons tasked the EPC in May 2021, under Templeton's leadership, with studying physician misinformation and disinformation, the FSMB House of Delegates adopted "Professional Expectations Regarding Medical Misinformation and Disinformation" on April 30, 2022, which Plaintiffs call the "FSMB Censorship Policy." *Id.* ¶¶ 2, 345, 384. Plaintiffs allege that the policy encouraged state boards to adopt misinformation policies, consider authorized grounds for discipline in their medical practice acts, and treat misinformation and disinformation as ethical and professional concerns. *Id.* ¶¶ 6–9, 11–12, 384.

Plaintiffs also gesture at a broader set of supposed "predecessor censorship agreements" and related policies, *see id.* ¶¶ 13, 537, but they do not identify them with specificity. As to the FSMB Defendants, the FAC points only to a handful of alleged acts: Kirchmeyer's alleged 2018–2019 involvement with unidentified FSMB leadership; an October 6, 2020 FSMB public statement about face coverings; an alleged December 2020 communication from FSMB leadership to

[1] Solely for the sake of clarity and consistency with the FAC's terminology, the FSMB Defendants refer to the statement/policy using the pejorative terms assigned by the FAC (the "Censorship Statement" and "Censorship Policy").

member boards that physicians who cast doubt on vaccine safety and efficacy "should be disciplined"; an alleged demand that Rhode Island discipline Dr. Brody; Templeton's October 2021 webinar comments; and Simons' February 2022 town-hall remarks. *See id.* ¶¶ 310, 313, 315, 324, 359, 372–78.

### C. State Board Investigations into and Discipline of Plaintiffs

The FAC confirms that each alleged injury arose through distinct state-board proceedings. Dr. Sutton's California matter began in 2016, when complaints and reports concerning her vaccine-exemption letters were submitted to the Medical Board of California ("MBC"), including complaints in June 2016, November 2016, February 2017, and May 2017. *Id.* ¶¶ 257–70, 275–85. MBC adopted an ALJ's proposed revocation decision on December 8, 2021, effective January 7, 2022. *Id.* ¶¶ 368–70. The Massachusetts Board of Registration in Medicine ("BORIM") later revoked her license on July 13, 2023, based on MBC's discipline, and the New York State Board for Professional Medical Conduct ("NBPMC") revoked her license on November 3, 2023, after reviewing MBC's findings. *Id.* ¶¶ 396, 399.

Dr. Humiston's California matter began in March 2019, when MBC assigned an investigation based on media coverage and public-records data concerning vaccine exemptions. *Id.* ¶¶ 304–05. MBC revoked his California license on February 6, 2023, effective March 8, 2023. *Id.* ¶¶ 389–95. The Medical Licensing Board of Indiana ("MLBI") then suspended his license on January 30, 2025 based on California's revocation. *Id.* ¶¶ 404–05.

Dr. Brody's Rhode Island proceeding began when the Rhode Island Board of Medical Licensure and Discipline ("RIBMLD") received a complaint on December 30, 2020. *Id.* ¶ 319. RIBMLD subpoenaed him to appear before an investigative committee on January 7, 2021, issued a consent order on April 14, 2021, suspended him on July 14, 2021, and then suspended him indefinitely on January 1, 2022 after he failed to complete the required education course. *Id.*

¶¶ 325–27, 331–32, 344, 367. MBC later issued reciprocal discipline on September 7, 2023, based on RIBMLD's action. *Id.* ¶¶ 397–98.

Dr. Bowden's Texas matter began with a complaint to the Texas Medical Board ("TMB") on October 27, 2021, about her attempt to treat a patient in a facility without privileges and practicing outside the scope of her expertise, followed by additional complaints and materials submitted in November and December 2021. *Id.* ¶¶ 422, 451, 454–55. TMB filed a complaint with the Texas State Office of Administrative Hearings on April 25, 2023. *Id.* ¶ 457. After intermediate rulings in 2025, TMB reprimanded Dr. Bowden on October 17, 2025. *Id.* ¶¶ 481–83, 489, 493–94.

Dr. Wilkinson's Washington matter followed the Washington Medical Commission's ("WMC") September 22, 2021, adoption of its own COVID-19 misinformation statement. *Id.* ¶¶ 496–97. WMC served charges on June 7, 2022, held a hearing from April 3 to 7, 2023, and placed his license on probation on August 12, 2023. *Id.* ¶¶ 501–06, 511–16. The Washington Court of Appeals reversed and dismissed certain charges on September 16, 2025, remanded the rest, and the Washington Supreme Court denied review on April 1, 2026. *Id.* ¶¶ 523, 526.

**D. The Admitted Lack of FSMB Defendant Involvement**

The FAC does not allege that FSMB, Templeton, or Simons revoked, suspended, restricted, reprimanded, placed conditions on, or otherwise disciplined any Plaintiff's medical license. Nor does it allege that they brought charges, prosecuted administrative cases, issued subpoenas, held hearings, entered orders, or restored or refused to restore any license. Instead, the FAC alleges, without supporting material facts, that the FSMB Defendants "participated" in a "conspiracy" with state boards and state officials. *Id.* ¶¶ 536–41. Plaintiffs seek damages from the FSMB Defendants based on that conspiracy theory, but they seek license-restoration relief only from state board members in their official capacities. *Id.*, Prayer for Relief ¶¶ (b), (d)–(e).

## III. LEGAL STANDARD

Rule 12(b)(6) requires dismissal unless the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept well-pleaded facts as true, but not legal conclusions, speculation, or formulaic recitations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Dismissal should be with prejudice where amendment would be futile. *Foster v. Jesel*, 164 F.4th 401, 404 (5th Cir. 2026).

A Section 1983 conspiracy claim requires facts showing both "an agreement between the . . . defendants to commit an illegal act" and "an actual deprivation of constitutional rights." *See Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)); *see also Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004). Where a private party is involved, Plaintiffs must also plead facts showing that the private party was a "willful participant in joint activity with the State or its agents." *Cinel*, 15 F.3d at 1343 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Bare conclusory allegations that defendants agreed, conspired, encouraged, or acted in concert do not suffice; the complaint must plead material facts making an unlawful agreement plausible. *See Terwilliger*, 4 F.4th at 285; *Green v. State Bar of Tex.*, 27 F.3d 1083, 1088 (5th Cir. 1994); *Lynch v. Cannatella*, 810 F.2d 1363, 1370–71 (5th Cir. 1987).

## IV. ARGUMENT

### A. Plaintiffs Do Not Plausibly Plead an Agreement to or Willful Joint Participation in a Constitutional Deprivation by the FSMB Defendants (Count II).[2]

Count II's first element requires a plausible agreement or meeting of the minds between the FSMB Defendants and state actors to commit an illegal act. *See Priester*, 354 F.3d at 420; *see also Lewis v. Law-Yone*, 813 F. Supp. 1247, 1256–57 (N.D. Tex. 1993) (dismissing complaint where no agreement with a state actor existed). Plaintiffs do not plead one. The FAC instead tries to infer agreement from broad generalizations that Defendants agreed to implement FSMB's 2021 "Censorship Statement," 2022 "Censorship Policy," and unspecified "predecessor censorship agreements"; conclusory allegations that FSMB "demanded," state boards "agreed," or "forced" discipline; and public statements discussing physician misinformation. *See infra* Part IV.A.1. Not one pleads a fact-based agreement by the FSMB Defendants to violate Plaintiffs' rights.

Plaintiffs' FAC fails because it relies on outsized claims about the influence of nonbinding best-practices standards on independent state-board action but pleads no material facts supporting an actionable agreement to deprive Plaintiffs of the right to express alternative viewpoints on matters of medicine. A bald allegation of conspiracy does not suffice. *Lynch*, 810 F.2d at 1370 (rejecting conspiracy claim lacking operative facts showing an agreement or participation). Plaintiffs must plead facts suggesting an actual agreement among the alleged conspirators. *Green*, 27 F.3d at 1088 n. 9 (rejecting conspiracy claim where plaintiff failed to aver sufficient facts to support a reasonable inference of a conspiracy). They have not done so.

---

[2] Plaintiffs expressly exclude FSMB, Templeton, and Simons from Count I and names them only in Count II, the § 1983 conspiracy count. FAC ¶¶ 535, 537–41. The FSMB Defendants thus only address Count II in this motion.

### 1. *Plaintiffs Fail to Adequately Allege the Existence of an Agreement to Discriminate Against Plaintiffs.*

Plaintiffs' central theory is not that the FSMB Defendants agreed to discipline any specific Plaintiff themselves. It is that all Defendants generally agreed to "implement" the so-called "Censorship Statement," the "Censorship Policy," and unspecified "predecessor censorship agreements" to suppress non-consensus medical viewpoints. *See, e.g.*, FAC ¶ 537. A Section 1983 conspiracy, however, requires a plausible agreement to commit the alleged illegal act. *See, e.g.*, *Green*, 27 F.3d at 1088 n. 9.

*Jabary v. City of Allen*, 547 F. App'x 600 (5th Cir. 2013), illustrates the point. There, the plaintiff alleged that local officials "held private meetings," had "several conversations, private meetings, and other communications," and "actively conspired" to deprive him of his civil rights by revoking his certificate of occupancy. *See id.* at 610–11. The Fifth Circuit found those allegations to be conclusory in nature and explained that the complaint did not plead the "times, places, and other circumstances" of the alleged meetings or conversations and therefore did not create a reasonable inference that an agreement existed. *Id.* at 611. That was true even though the plaintiff had plausibly pleaded an actual procedural-due-process deprivation against two officials who personally participated in the revocation. *Id.* at 607–11. The lesson from *Jabary* is straightforward: alleging little more than the existence of meetings, conversations, and that parties agreed to a conspiracy is insufficient to survive a motion to dismiss. *See id.*

The FAC pleads less than *Jabary*. As discussed below, Plaintiffs do not identify material facts that sufficiently establish any meeting, conversation, or communication in which FSMB, Templeton, or Simons agreed with a state board to discipline Dr. Sutton, Dr. Humiston, Dr. Brody, Dr. Bowden, Dr. Wilkinson, or any PPRM member. They do not identify the participants in any plaintiff-specific agreement, the time or place it was reached, its terms, its unlawful object, or the

disciplinary decision it supposedly controlled. At most, Plaintiffs try to recast generalized communications and conclusions as conspiratorial agreements. Not one is persuasive.

Only four paragraphs in the approximately 300-paragraph factual section of the FAC allege that an "agreement" occurred, and all three state that conclusion without supporting facts.

- **Paragraph 310.** Plaintiffs allege that Kirchmeyer "joined and enlisted the help of the FSMB's national leadership" to overcome resistance within MBC and, on information and belief, leaps to the conclusion that Kirchmeyer and unidentified "members of the FSMB national leadership" agreed at FSMB headquarters to pressure California and other boards. FAC ¶¶ 308–10. But the FAC never supplies the facts that would make that leap plausible. It does not say which FSMB Defendant participated, who else was there, when the supposed agreement was reached, what was said, what terms were adopted, or how any such discussion controlled a disciplinary decision against Dr. Sutton, Dr. Humiston, or anyone else. Notably, Paragraph 310 itself caveats that the alleged "pressure" agreed to was only to enforce laws already on the books—the "pressure" would only be imposed on medical boards with a legal basis to discipline physicians based on laws like California's Senate Bill 277 ("SB 277"). Not only does this paragraph fail to adequately allege a conspiracy agreement, *see, e.g.*, *Green*, 27 F.3d at 1088 n. 9, it does not even allege an illegal purpose and therefore cannot support a conspiracy claim, *see Casaubon v. Texas Mut. Ins. Co.*, No. 1-19-CV-00617-DII, 2024 WL 5295081, at *6 (W.D. Tex. Dec. 5, 2024), *report and recommendation adopted*, No. 1:19-CV-617-DII, 2025 WL 44150 (W.D. Tex. Jan. 6, 2025) (recommending dismissal where allegations failed to identify an illegal purpose or existence of agreement).

- **Paragraph 315.** Similar to Paragraph 310, Paragraph 315 vaguely alleges (on information and belief) that FSMB's national leadership "communicated" to member medical boards that "physicians" contradicting prevailing public health and safety guidance "should be disciplined" and the member boards "agreed." Plaintiffs fail to aver who in leadership, which medical boards, and which doctors were the subject of the "agree[ment]." It identifies no statements with which FSMB leadership allegedly disagreed, no policy or guideline which FSMB thought these unnamed physicians violated, or even which states in which the physicians practiced. It does not even *mandate* discipline because it only says there "should" be discipline. *Id.* This alleged meeting is supported by no greater detail than the plaintiff in *Jabary* averred, and the result should be the same: dismissal. *See* 547 F. App'x at 611.

- **Paragraph 324.** Plaintiffs allege, on information and belief only, that "FSMB's national leadership" learned of Dr. Brody's letter, "demanded" that Rhode Island discipline him, and that Rhode Island "agreed to do so." FAC ¶ 324. Nothing more. The FAC does not identify who at FSMB supposedly learned of the letter, who made the alleged demand, who received it, when it was made, how it was communicated, what Rhode Island supposedly agreed to do, or which Rhode Island decisionmaker agreed. It also does not allege that Templeton or Simons participated at all. The FAC supplies no facts showing that FSMB caused, directed, or joined Rhode Island's disciplinary actions. It simply inserts the words "demanded" and "agreed" between Rhode Island's own disciplinary process and Plaintiffs' conspiracy theory. *See id.* That is not enough. *See Terwilliger*, 4 F.4th at 285–86 (reversing denial in part of motion to dismiss conspiracy claim supported by bare allegations of "agreement" and "conspiracy").

- **Paragraph 368.** Rather than alleging a specific "agreement," Plaintiffs here allege that the "Censorship Statement" and the "Censorship Policy" finally forced MBC board members to start disciplining California physicians for writing statements of medical exemption from childhood vaccinations[.]"[3] FAC ¶ 368. This paragraph fails for three reasons. First, the FAC does not identify who was forced, who did the forcing, what threat was made, when it was made, how it was communicated, what vote changed, or what authority FSMB had to compel MBC action and is thus legally insufficient. *See, e.g.*, *Jabary*, 547 F. App'x at 611. Second, the FAC only alleges that the "Censorship Statement" concerned COVID-19—not childhood vaccinations. FAC ¶ 346. The FAC does not explain how statements and policies related to COVID-19 "forced" some disciplinary action related to childhood vaccines. Third, it would be implausible to find that the "FSMB Censorship Policy," which was adopted in April 2022, could have "forced" California to "start" disciplining the Plaintiffs when their violations of state law and subsequent disciplinary proceedings began years prior. FAC ¶¶ 262–94, 384, 394–95. Since Paragraph 368 is legally insufficient and factually inconsistent, it cannot support a claim for Section 1983 conspiracy. *See Montgomery v. Walton*, 759 F. App'x 312, 314–15 (5th Cir. 2019) (affirming dismissal of complaint with conclusory allegations lacking material facts and internal consistency).

Plaintiffs also take issue with public statements made by certain FSMB Defendants, none of which constitutes an agreement with the other Defendants to violate Plaintiffs' rights.

- **Paragraphs 353–59.** The FAC cites FSMB's media activity and an October 2021 public forum about how medical boards should navigate the boundary between professional

[3] FSMB's "Censorship Statement" was released in July 2021 and "Censorship Policy" was circulated allegedly in "at the end of" 2021 and adopted in April 2022.

conduct and professional speech. FAC ¶¶ 353–59. First, FSMB's general media activity, not directed to any particular medical board, is far too attenuated from the specific disciplinary actions complained of by plaintiffs. As to the webinar, the Brody-specific reference came from Imran Ahmed, a third-party panelist, who also caveated that he was speaking as a member of the public, rather than as a representative of any organization. *Id.* ¶ 358. Templeton did not single out Dr. Brody or any other Plaintiff, nor did she direct a board to bring charges, dictate an outcome, or purport to bind any state official. *See id.* ¶ 359. Moreover, the comments here all post-date Brody's July 14, 2021, suspension. *See id.* ¶ 344. General agreement with third parties and media activity do not evidence an agreement to violate constitutional rights. *See Priester*, 354 F.3d at 420 (affirming dismissal of conspiracy claim supported by allegations that defendants "encouraged and/or allowed" complained-of behavior); *see also United States v. Edwards*, 488 F.2d 1154, 1158 (5th Cir. 1974) ("Mere knowledge, approval or acquiescence in the object or purpose of a conspiracy does not make one a conspirator" (quoting *United States v. Thomas*, 468 F.2d 422, 425 (10th Cir. 1972)).

- **Paragraphs 372, 377–78.** Nor do comments made during a February 2022 town hall constitute an agreement. The FAC alleges that Simons and FSMB's president discussed draft guidance with state-board leadership and that Simons observed that boards should consult their own attorneys about what disciplinary action "might be appropriate" under their "particular state statutes." FAC ¶¶ 372, 377–78. That allegation defeats, rather than supports, conspiracy. It recognizes that each board's authority depends on its own law, counsel, procedures, and independent judgment. *See id.* It is not evidence of an agreement to violate Plaintiffs' rights and is not a directive to discipline protected viewpoints. *Cf.*

*Hernandez v. Causey*, 124 F.4th 325, 338 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1930, 221 L. Ed. 2d 667 (2025) (affirming dismissal where allegations demonstrated no meeting of the minds and rather that one defendant made his own decisions).

Finally, none of the remaining scattered allegations suffices:

- **Paragraphs 83–84.** Plaintiffs allege that FSMB's bylaws allow internal discipline of Member Medical Boards for failing to comply with FSMB bylaws, articles, rules, regulations, or contracts. FAC ¶¶ 83–84. The FAC does not allege that FSMB invoked, threatened, had the power to, or even discussed investigation, censure, suspension, expulsion, or reprimand against any board in connection with failure to adopt its policies, let alone discipline Dr. Sutton, Dr. Humiston, Dr. Brody, Dr. Bowden, Dr. Wilkinson, or impede upon the viewpoints expressed by PPRM members or the ability of patients to seek treatment from PPRM members. Nor does it, for instance, allege that any board disciplined a physician because it feared internal FSMB consequences. The bylaws show, at most, FSMB's internal association governance is consistent with the laws of the state of its incorporation.[4] *See* Neb. Rev. Stat. § 21-1947 (Termination, expulsion, and suspension of nonprofit members). Such consistency is not evidence of coercion, agreement, or willful joint participation to deprive plaintiffs the ability to express a viewpoint. *See Casaubon*, 2024 WL 5295081, at *5–6 (rejecting conspiracy where one of the alleged coconspirators was operating pursuant to state law requirements).

---

[4] The FAC also notes licensure and credentialing resources provided by FSMB. FAC ¶¶ 89–98. Courts have recognized that consistent licensure standards and credentialing resources serve important public-protection and market-integrity functions, particularly where consumers may have difficulty assessing whether a professional is qualified. *Kitchens v. Nat'l Bd. of Med. Exam'rs*, No. CV 5:24-151-DCR, 2025 WL 318102, at *7 (E.D. Ky. Jan. 28, 2025). FSMB's publication of physician disciplinary history likewise concerns matters of public interest. *Day v. Fed'n of State Med. Bds. of the U.S., Inc.*, 579 S.W.3d 810, 828–29 (Tex. App. 2019).

- **Paragraph 313.** "Implicitly threatened" does not plead conspiracy. FAC ¶ 313. It pleads Plaintiffs' gloss on a public statement. The FAC identifies no directive, no recipient who agreed, no physician targeted, no board action caused by the statement, and no link to any Plaintiff's discipline. It does not even quote the text that allegedly constituted the "threat[]." *See id.* Plaintiffs' unsupported characterization of a public statement is not an agreement to violate rights. *See Terwilliger*, 4 F.4th at 285–86.
- **Paragraph 456.** Paragraph 456 is a non sequitur. The surrounding Bowden allegations concern Texas actors, Methodist Hospital, the hospital-privileges dispute, and the Texas Medical Board's own proceeding. FAC ¶¶ 422–55. FSMB does not appear in that narrative. Then paragraph 456 abruptly asserts that FSMB "encouraged and facilitated" TMB's action against Dr. Bowden. FAC ¶ 456. The sudden inclusion of FSMB is wholly unsupported, even though Plaintiffs had ample opportunity in the preceding 33 paragraphs to explain FSMB's role in the narrative. Paragraph 456 is thus conclusory and unentitled to the presumption of truth on a motion to dismiss. *See, e.g.*, *Lynch*, 810 F.2d at 1370; *Green*, 27 F.3d at 1088 n. 9.

Individually, or even taken together, these allegations do not move Plaintiffs closer to a sufficiently pleaded agreement.

*Bevill v. Fletcher*, 26 F.4th 270 (5th Cir. 2022), illustrates the contrast between the FAC and a sufficient pleading. There, the plaintiff did not ask the court to infer a conspiratorial agreement from public advocacy, policy alignment, or generalized influence. He pleaded a concrete, plaintiff-specific agreement: identified officials met with the mayor, threatened to withhold resources and support unless the plaintiff was fired because of his protected affidavit, and those threats led to his termination. *Id.* at 273–74, 283–84. Those allegations described who

participated, what they demanded, why they acted, and how their pressure caused a particular adverse action against a particular plaintiff. *Id.* at 284. Less does not suffice. *See Montgomery*, 759 F. App'x at 314–15 (affirming dismissal where the plaintiff alleged a broad conspiracy but failed to plead specific, nonconclusory facts establishing an agreement, including the time, date, place, circumstances, common motive, or connection between public officials and private citizens).

Nothing comparable to *Bevill* appears here. Every adverse action alleged in the FAC arose from state processes involving state complaints, subpoenas, hearings, written orders, and judicial review, without FSMB involvement. *See supra* Part IV.A.1. The FAC shows, at most, independent state action after private advocacy—not the unlawful agreement Count II requires. Thus, Count II should be dismissed as to the FSMB Defendants.

#### 2. *Plaintiffs Do Not Plead Willful Participation or Joint Activity in Any Particular Disciplinary Decision.*

Plaintiffs also fail to plead decision-specific involvement. The FAC repeatedly identifies formal state enforcement machinery—complaints, subpoenas, investigative committees, hearings, sanctions, and judicial review—as the source of the alleged injuries. *See, e.g.*, FAC ¶¶ 319–44, 367 (Rhode Island); ¶¶ 257–70, 368–69 (California); ¶¶ 404–05 (Indiana); ¶¶ 396–99 (Massachusetts and New York); ¶¶ 406–26, 476–95 (Texas); ¶¶ 496–526 (Washington). Those proceedings, not FSMB's advocacy, are the decisive acts that allegedly deprived Plaintiffs of rights. The FAC then tries to bridge the gap with labels parroting the elements of a conspiracy claim, such as "willful participants" and "jointly agreed." *See, e.g.*, *id.* ¶¶ 536–41. Such allegations are not entitled to the presumption of truth on a motion to dismiss. *Iqbal*, 556 U.S. at 678–79.

The missing allegations are dispositive. It is not enough for the plaintiff to "allege that the private and state defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves towards an unconstitutional action by

virtue of a mutual understanding." *Todd v. City of Natchitoches, Louisiana*, 238 F. Supp. 2d 793, 803 (W.D. La. 2002) (quoting *Bayou Fleet, Inc. v. Alexander*, 68 F. Supp. 2d 734, 745 (E.D. La. 1999)) (internal alterations omitted). If Plaintiffs could have pleaded any additional facts—even on information and belief—they would have done so on amendment. They did not, because they cannot. No such facts exist.

### B. Plaintiffs Do Not Plausibly Plead an Actual Constitutional Deprivation.

#### 1. *Every Complained-of Action Against Plaintiffs Followed State Law.*

Count II also fails on the second element required by *Cinel* and *Terwilliger*: an actual deprivation of constitutional rights. Plaintiffs do not allege that the FSMB Defendants directly deprived them of any right. They allege discipline by state boards. And because Count I is not asserted against FSMB, Templeton, or Simons, Plaintiffs must connect the alleged deprivation to the FSMB Defendants through the conspiracy itself. That connection is missing.

The FAC confirms that every alleged deprivation was imposed by a state board pursuant to state law. The California, Rhode Island, Texas, Massachusetts, New York, Indiana, and Washington proceedings involved state complaints, investigative processes, administrative hearings or committee proceedings, written disciplinary orders, reciprocal-discipline mechanisms, and judicial review. FAC ¶¶ 257–70, 319–44, 367–69, 389–99, 404–05, 422, 457, 476–95, 496–526. The FSMB, Templeton, or Simons, as non-state actors, had no role in these disciplinary actions.

Nor does the FAC plead a uniform speech-only deprivation. Plaintiffs characterize the discipline as viewpoint suppression, but their own allegations describe state-board findings involving professional-conduct issues: vaccine-exemption practices, documentation and contraindication findings, patient-care and informed-consent concerns, hospital-privileges and disruptive-conduct allegations, remediation requirements, reciprocal discipline, and remanded

patient-care charges. FAC ¶¶ 370, 391–95, 396–405, 422–83, 515–16, 523. Following state law mechanisms for reporting, investigating, and disciplining regulated individuals cannot be the basis for a constitutional deprivation. *See Casaubon*, 2024 WL 5295081, at *5–6.

### 2. *Reciprocal Discipline Does Not Plead a Conspiracy or Deprivation by FSMB.*

Several of the challenged orders are reciprocal or follow-on discipline decisions. Massachusetts disciplined Dr. Sutton and Dr. Brody based on discipline imposed elsewhere; New York acted against Dr. Sutton after reviewing California's findings; and Indiana suspended Dr. Humiston based on California's prior revocation. FAC ¶¶ 397–99, 404. Plaintiffs do not plead that those boards denied due process, that FSMB participated in any reciprocal or follow-on discipline proceeding, or that any reciprocal or follow-on board agreed with FSMB to restrict Plaintiffs' rights. They plead only that the enforcement of laws and regulations governing licensed professionals subjected Plaintiffs to discipline by state regulators.

That ordinary operation is not evidence of conspiratorial acts. States have long recognized that professional discipline in one jurisdiction may justify reciprocal discipline in another, so long as the licensee receives appropriate process. Indiana law authorizes discipline when a practitioner has been disciplined in another state on similar grounds. Ind. Code § 25-1-9-4(a)(7); *see also* Ind. Code § 25-22.5-5-2(b). Massachusetts likewise authorizes reciprocal discipline when another jurisdiction has acted against a physician's license for substantially similar reasons. Mass. Gen. Laws ch. 112, §§ 5, 61; 243 Mass. Code Regs. § 1.03(5)(a)(12); *Haran v. Bd. of Registration in Med.*, 398 Mass. 571, 576–80 (1986). So too for New York. N.Y. Educ. Law § 6530(9)(d). And the principle is broader than medicine: reciprocal discipline protects the public and professional standards across jurisdictions. *See Selling v. Radford*, 243 U.S. 46, 50–51 (1917); *In re Smith*, 123 F. Supp. 2d 351, 352–55 (N.D. Tex. 2000).

Treating reciprocal or follow-on discipline as evidence of a national conspiracy would turn a settled professional-regulation doctrine into a basis for constitutional tort claims against regulatory boards across licensed professions, including medicine and law. Nothing in Count II supports that leap. Those boards acted because other state boards had already imposed discipline or made findings, not because FSMB directed them, participated in their proceedings, or entered an unlawful agreement with them. Those orders therefore do not supply an actual deprivation attributable to the FSMB Defendants.

That distinction is dispositive. To plead an actual deprivation by conspiracy, Plaintiffs must allege facts showing that the FSMB Defendants' agreement caused or participated in the deprivation. *See Cinel*, 15 F.3d at 1343. But the FAC alleges no such facts. It does not allege that the FSMB Defendants initiated any charge, supplied evidence for any charge, directed any prosecutor, controlled any hearing, voted on any sanction, or authored any order. The boards made the decisions Plaintiffs challenge. FSMB did not.

The timing underscores the point. Dr. Sutton's California investigation began years before FSMB's July 2021 statement. FAC ¶ 277–285. Dr. Humiston's California matter began in 2019. *Id.* ¶ 305. Dr. Brody was investigated and disciplined by Rhode Island between December 2020 and July 2021, before or contemporaneous with the first challenged FSMB statement. *Id.* ¶¶ 316–44, 346. Conduct that preceded the challenged advocacy cannot have been caused by it, much less by an unlawful agreement formed through that advocacy.

Nor can Plaintiffs save Count II by aggregating disciplinary actions brought independently by state medical boards, applying their own laws and policies to differing fact patterns, into one supposed nationwide conspiracy to restrict free expression of one's viewpoint on issues of medical science. The boards acted in different states, under different statutes, on different records, through

different decisionmakers, and at different times. *See supra* Part IV.A.1. The FAC alleges no facts showing a single agreement that controlled those independent decisions. Without that connective tissue, the state-board orders are independent acts in which the FSMB Defendants did not participate.

Dr. Wilkinson's disciplinary history and dispute with the Washington Medical Commission do not save Count II. The FSMB Defendants recognize that the Washington Court of Appeals reversed and dismissed the Washington Medical Commission's speech-based charges involving Dr. Wilkinson's blog posts, and the Washington Supreme Court denied review. FAC ¶¶ 523, 526. But that adverse state-court ruling proves, at most, that the Washington board overstepped the bounds of state law in its independent review of charges of unprofessional conduct. It does not plead an agreement between any FSMB Defendant and any Washington decisionmaker to overstep. The FAC pleads no facts showing that FSMB supplied evidence, directed charges, controlled the administrative process, or participated in the Washington actions that were ultimately reviewed and corrected by the state judicial process. The remaining patient-care allegations were remanded, not finally adjudicated as a constitutional deprivation. Without facts supporting the existence of an unlawful agreement tying FSMB to Washington's specific disciplinary decision, Wilkinson's reversed speech charges cannot supply the missing second element of Count II. *Terwilliger*, 4 F.4th at 285.

#### 3. *Plaintiffs Improperly Cloak Professional Misconduct in First Amendment Protections.*

Plaintiffs also cannot save Count II by recasting every professional-conduct finding as protected speech. Medical discipline often concerns conduct carried out through words—diagnoses, prescriptions, informed-consent discussions, charting, exemption letters, expert submissions, and treatment recommendations. That does not make every professional-standard

violation a First Amendment injury. The FAC itself alleges that state boards grounded discipline in professional-conduct findings: California found gross negligence and repeated negligence in issuance and documentation of vaccine exemptions; Massachusetts, New York, and Indiana relied on prior discipline or findings; Rhode Island required remediation to support education on professional and ethical standards and enforced discipline upon showing of a failure by the licensee to remediate; Texas proceeded on failure to obtain hospital-privileges and disruptive-conduct theories that were, by Texas's own statements, viewpoint agnostic; and Washington's remaining allegations concern patient care and informed consent, not just blog posts. *See* FAC ¶¶ 331, 367, 370, 391–405, 422–83, 515–16, 523. Plaintiffs may believe those boards were wrong, biased, or too aggressive in their application of laws and regulations governing the practice of medicine and the development of policies addressing ethical and professional responsibilities of licensees. But the FAC reads as a missive expressing disagreement with state professional-conduct determinations on matters of medical science, and fails to plead an actual constitutional deprivation by the FSMB Defendants. It does not support the conclusion that the FSMB's creation of nonbinding public-policy guidance amounts to a conspiratorial act to restrict free expression on viewpoints.

Because Plaintiffs plead no actual deprivation by the FSMB Defendants and no facts tying any state-board deprivation to a plausible unlawful agreement, Count II fails the second conspiracy element as well.

### C. The FSMB Defendants' Advocacy Is Immune from Section 1983 Conspiracy Liability.

Even assuming that there were facts sufficient to support a claim of conspiracy (there are not), the FSMB Defendants' advocacy for action by a state regulator is immune from a Section 1983 conspiracy claim under the *Noerr-Pennington* doctrine. Rooted in the First

Amendment's Petition Clause, the doctrine provides broad immunity for efforts to petition the legislative, executive, and judicial branches of government. Although first developed in the antitrust context, *Noerr-Pennington* has evolved into a robust constitutional safeguard that extends well beyond Sherman Act claims and bars a wide range of causes of action premised on protected petitioning conduct in this Circuit and others. *See Video Int'l Prod., Inc. v. Warner–Amex Cable Communications, Inc.,* 858 F.2d 1075, 1084 (5th Cir.1988); *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092–93 (9th Cir. 2000). Indeed, the Fifth Circuit has repeatedly recognized that *Noerr-Pennington* immunizes private parties from Section 1983 conspiracy claims where the private party sought to petition government officials, administrative agencies, regulatory bodies, or courts for favorable government action, even when the requested action would be detrimental to the interests of others, or is allegedly motivated by anticompetitive or retaliatory intent to harm others. *See, e.g.*, *Video Int'l*, 858 F.2d at 1084; *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 863 (5th Cir. 2000); *Veritext Corp. v. Bonin*, 417 F. Supp. 3d 778, 786–88 (E.D. La. 2019).

The same principle applies here. The FAC alleges that the FSMB's protected advocacy amounts to a conspiracy. The FSMB issued public statements, developed nonbinding policy guidance, hosted or participated in public discussion about physician misinformation, communicated with member medical boards, and encouraged boards to consider whether physician misinformation may implicate professional standards under their own state laws. FAC ¶¶ 346, 353, 355, 357, 372–79, 384. That is petitioning and advocacy that has been protected by prior court decisions. It is not actionable conspiracy. Private parties do not become Section 1983 conspirators merely because they urge state regulators to adopt a policy position or enforce existing law or take disciplinary action. *See Veritext*, 417 F. Supp. 3d at 786–88; *Video Int'l*, 858 F. Supp.

2d at 1084; *Bayou Fleet*, 234 F.3d at 861–63.

The facts and activities pled in the FAC cannot be characterized as a sham, a limited exception to right to petition. Shams are defined as petitioning that uses the governmental process itself, rather than a reasonably requested governmental outcome, as the weapon to infringe on the rights of others. *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991); *Bayou Fleet*, 234 F.3d at 861–62. Here, FSMB created advisory policies and urged general action, but every challenged sanction was issued by a state board acting in its own name and on its own findings under state law—California, FAC ¶¶ 370, 391, 395; Rhode Island, *id.* ¶¶ 327, 332; Massachusetts and New York, *id.* ¶¶ 396, 398, 399; Indiana, *id.* ¶¶ 404–05; Texas, *id.* ¶¶ 483, 493; and Washington, *id.* ¶¶ 511–12, 515–16—each grounding its decree in professional-conduct provisions of its medical-practice act. Whether Plaintiffs call that advocacy a conspiracy and complains it limits the ability of patients to obtain medical treatment from a subset of physicians does not change the analysis.

*Video International* is instructive. There, a private cable company urged city officials to interpret zoning laws in a way that would restrict a competitor. 858 F.2d at 1082–84. The Fifth Circuit held that the private party's petitioning was protected even though it sought government action that would eliminate competition. *Id.* at 1082. The court also rejected the attempt to repackage protected petitioning as Section 1983 liability. *Id.* at 1084. Conduct protected from antitrust liability under *Noerr-Pennington*, the court held, is likewise outside the scope of Section 1983 liability absent a corrupt conspiracy sufficient to defeat petitioning protection. *Id.* Otherwise, ordinary petitioning could be converted into federal civil-rights liability any time a disappointed plaintiff alleged that a private party's advocacy influenced government action. *Id.*

The FAC alleges no facts taking the FSMB Defendants outside that protected zone. It alleges no bribery, no personal corruption, no control over state-board votes, no participation as adjudicators, no prosecution of charges, and no use of administrative process merely to impose delay or expense. It alleges protected policy advocacy. Count II therefore fails for this independent reason.

*Bayou Fleet* confirms the point. 234 F.3d 852, 862–63. There, private competitors contacted a parish councilmember, wrote letters to the Army Corps of Engineers, participated in public hearings, and urged officials to deny permits and revoke a competitor's zoning status. *Id.* at 854–56. The Fifth Circuit held that those lobbying efforts were immune from liability under the Sherman Act, Section 1983, and state unfair-trade-practices law. *Id.* at 859–63. That was true even though the plaintiff alleged that the defendants were trying to put it out of business and retaliating against it for filing suit. *Id.* at 861–62. Subjective hostility does not defeat immunity. *Id.* The relevant question is whether the defendants genuinely sought government action. *Id.* at 862.

Once Plaintiffs' abandoned state-actor theory from the Original Complaint is set aside and their deficient conspiracy allegations are examined, the FAC is revealed for what it is: an effort to penalize the FSMB Defendants for exercising their own rights to engage in advocacy and to petition the government on matters of regulatory policy with which Plaintiffs disagree. That is precisely the type of claim the *Noerr-Pennington* doctrine prohibits, and the Court should dismiss the conspiracy claim as a matter of law.

**D. Dismissal Should Be with Prejudice**

Dismissal should be with prejudice because Plaintiffs' own amendment confirms futility. A district court need not grant leave to amend when the plaintiff has already had a fair opportunity to cure the pleaded defects and the proposed or likely amendment would not state a claim. *Foster*, 164 F.4th at 404; *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468

(5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir.2003)). The FSMB Defendants' initial motion to dismiss identified the missing facts and they chose to drop allegations against the FSMB Defendants rather than add.

Those deletions are not just concessions on the merits of the claims. They show that the Plaintiffs seek to use the judicial system, through insufficiently plead allegations of conspiracy, influence the ability of the FSMB to express its own viewpoints on matters of professional regulation. Plaintiffs had the roadmap, the opportunity, and the incentive to add plaintiff-specific conspiracy facts. Instead, they narrowed the pleading and left only information-and-belief assertions that unidentified boards "agreed to do so." *Id.* ¶¶ 315, 324. Plaintiffs have already demonstrated they have no further facts to offer and thus amendment would be futile. Count II should be dismissed with prejudice.

## V. CONCLUSION

For these reasons, the FSMB Defendants respectfully request that the Court dismiss Count II with prejudice. The FAC no longer asserts any direct constitutional-deprivation claim against FSMB, Templeton, or Simons. Plaintiffs instead plead conspiracy, but they plead neither required element: no facts showing an agreement or willful joint participation by the FSMB Defendants in any state disciplinary decision, and no actual constitutional deprivation attributable to them. Because Plaintiffs cannot transform nonbinding public-policy advocacy and independent state-board discipline into a Section 1983 conspiracy, dismissal should be with prejudice.

DATED: July 24, 2026

Respectfully Submitted,

/s/ *Grant K. Schmidt*

Grant K. Schmidt
Texas Bar No. 24084579
Hannah Luke
Texas Bar No. 24131898
HILGERS PLLC
8750 N. Central Expressway, Suite 750
Dallas, TX 75230
Telephone: 469-751-2819
Facsimile: 402-413-1880
Email: gschmidt@hilgerslaw.com
Email: hluke@hilgerslaw.com

Eric M. Fish (*admitted pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
401 9th Street, NW, Suite 550
Washington, DC 20004
Telephone: (202) 905-2163
Facsimile: (202) 609-8931
Email: efish@hooperlundy.com

Heather M. Romero (*admitted pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, Massachusetts 02210
Telephone: (617) 632-2717
Facsimile: (617) 848-0625
Email: hromero@hooperlundy.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of July, 2026, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF filing system, which will send a notice of electronic filing to all counsel of record.

/s/ *Grant K. Schmidt*
Grant K. Schmidt