IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MARY KELLY SUTTON, JOHN HUMISTON, MARY TALLEY BOWDEN, MARK BRODY, RICHARD WILKINSON, PHYSICIANS AND PATIENTS RECLAIMING MEDICINE,<br>Plaintiffs,<br><br>v.<br><br>FEDERATION OF STATE MEDICAL BOARDS, INC., KATIE TEMPLETON, KENNETH SIMONS, MEDICAL BOARD OF CALIFORNIA, KIMBERLY KIRCHMEYER, RHODE ISLAND BOARD OF MEDICAL LICENSURE AND DISCIPLINE, NICOLE ALEXANDER-SCOTT, TEXAS MEDICAL BOARD, SHERIF ZAAFRAN, MASSACHUSETTS BOARD OF REGISTRATION IN MEDICINE, JULIAN ROBINSON, NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, ANDREW MERRITT, MEDICAL LICENSING BOARD OF INDIANA, JOHN STROBEL, WASHINGTON MEDICAL COMMISSION, CLAIRE TRESCOTT, CHARITY DEAN,<br><br>Defendants. | No. 4:25-cv-01230-P |

**BRIEF IN SUPPORT OF PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO <u>FED. R. CIV. P. RULE 12(b)(2)</u>**

Dated: August 12, 2026

Respectfully submitted,

Ilya I. Feoktistov (*pro hac vice*)
Law Office of Ilya Feoktistov
60 Burnham Dr.
Falmouth, MA 02540
Telephone: 617-462-7938
Email: if@ilyafeoktistov.com

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

RELEVANT FACTS ..... 1

LEGAL STANDARD ..... 1

ARGUMENT ..... 2

I. The Test for Specific Personal Jurisdiction ..... 2

A. Communications into Forum Are Sufficient Claim-Related Contacts for Tort Claims ..... 3

B. Causation Is Unnecessary to Show that Claim Arises Out of or Results from Claim-Related Contacts ..... 4

C. Fairness and Federalism Do not Preclude Personal Jurisdiction over Foreign State Officials Who Have Projected Themselves Across State Lines and Asserted a Pseudo-National Executive Authority ..... 6

II. Defendants' Claim-Related Contacts Establish Personal Jurisdiction for Both the Constitutional and the Common Law Tort Claims ..... 7

A. State Medical Board Defendants Both Traveled into and Communicated with the Forum with the Purpose of Agreeing to Discriminate Based on Viewpoint ..... 7

B. The Defendants' Agreement to Conspire and the Overt Acts of the Defendant State Medical Boards Were Related to or Arose out of Their Contacts with the Forum ..... 12

C. Personal Jurisdiction Over Defendant Foreign State Officials Is Fair and Reasonable Because the FAC Alleges They Seek to Completely Proscribe Non-Consensus Professional Medical Viewpoints Nationwide ..... 17

CONCLUSION ..... 20

CERTIFICATE OF SERVICE ..... 21

## TABLE OF AUTHORITIES

### Cases


*Allstate Ins. Co. v. Interline Brands, Inc.*,
997 F. Supp. 2d 501 (N.D. Tex. 2014) .......... 2

*Aviles v. Kunkle*, 978 F.2d 201 (5th Cir. 1992) .......... 4

*Baldwin v. Taishang Gypsum Co.*, Ltd.,
742 F.3d 576 (5th Cir. 2014) .......... 10

*Bibbs v. Molson Coors Bev. Co.*,
616 F. Supp. 3d 606 (N.D. Tex. 2022) .......... passim

*Breathwit Marine Contrs., Ltd. v. Deloach Marine Servs.*, LLC,
994 F. Supp. 2d 845 (S.D. Tex. 2014) .......... 5, 12, 13, 17

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, S.F. Cty.,
137 S. Ct. 1773 (2017) .......... 4, 9, 10

Brown *v. Flowers Indus.*,
688 F.2d 328, 332-33 (5th Cir. 1982) .......... 4

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 6, 10, 17

*Carbon Six Barrels, LLC v. Proof Rsch., Inc.*,
No. 22-CV-90-SDD-RLB, 2022 U.S. Dist. LEXIS 200931 (M.D. La. Nov. 4, 2022) .......... 6, 20

*Carmona v. Leo Ship Mgmt., Inc.*,
924 F.3d 190 (5th Cir. 2019) .......... 2, 5

*Chiles v. Salazar*,
607 U.S. 627 (2026) .......... passim

*Defense Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) .......... passim

*Delta Brands Inc. v. Danieli Corporation*,
99 Fed. App'x 1 (5th Cir. 2004) .......... 7

*Eriakha v. University of Miss.*,
No. 3:25-cv-00226-MPM-JMV, 2026 U.S. Dist. LEXIS 143396 (N.D. Miss. June 29, 2026) 15

*Fierros v. Texas Dep't of Health*,
274 F.3d 187 (5th Cir. 2001) .......... 15

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
592 U.S. 351 (2021)........................................................................................ 5, 12, 13, 17

*Hall v. Tone Knows, Inc.*,
No. 3:24-cv-3273-K, 2025 U.S. Dist. LEXIS 269780 (N.D. Tex. Dec. 3, 2025)............... 3, 4, 8

*Heaney v. Roberts*,
846 F.3d 795 (5th Cir. 2017).......................................................................... 15, 16, 17

*Hoover v. Morales*,
164 F.3d 221 (5th Cir. 1998).......................................................................................... 14

*Humble Oil & Ref. Co. v. Whitten*,
427 S.W.2d 313 (Tex. 1968) .......................................................................................... 13

*Jackson v. Tanfoglio Giuseppe S.R.L.*,
615 F.3d 579 (5th Cir. 2010)............................................................................................ 3

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002)............................................................................................ 9

*Latshaw v. Johnston*,
167 F.3d 208 (5th Cir. 1999)...................................................................................... 2, 12, 20

*Lewis v. Fresne*,
252 F.3d 352 (5th Cir. 2001)....................................................................................... 2, 4, 9

*Lozman v. City of Riviera Beach*,
585 U.S. 87 (2018)....................................................................................................... 16

*Luv N'care v. Insta-Mix, Inc.*,
438 F.3d 465 (5th Cir. 2006)............................................................................................ 2

*McFadin v. Gerber*,
587 F.3d 753 (5th Cir. 2009).................................................................................... passim

*Monkton Ins. Servs. v. Ritter*,
768 F.3d 429 (5th Cir. 2014)............................................................................... 3, 12, 17, 20

*Murthy v. Missouri*,
603 U.S. 43 (2024).......................................................................................................... 8

*National Architectural Prods. Co. v. Atlas-Telecom Servs. - USA, Inc.*,
No. 3:06-CV-0751-G ECF, 2007 U.S. Dist. LEXIS 51182, at *23
(N.D. Tex. July 13, 2007) ............................................................................................ 7, 9, 12

*NavSav Holdings, LLC v. Beber*,
724 F. Supp. 3d 615 (E.D. Tex. 2024) ............................................................................ 10

*Nuovo Pignone v. Storman Asia M/V*,
310 F.3d 374 (5th Cir. 2002) ........ 10

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007) ........ 5

*Pearson v. Shriners Hosps. for Children, Inc.*,
133 F.4th 433 (5th Cir. 2025) ........ 2, 12

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
515 U.S. 819 (1995) ........ 15, 16

*Stroman Realty, Inc. v. Wercinski*,
513 F.3d 476 (5th Cir. 2008) ........ 6, 7, 20

*Turner Broadcasting Sys. v. FCC*,
512 U.S. 622 (1994) ........ 19

*Wien Air Alaska, Inc. v. Brandt*,
195 F.3d 208 (5th Cir. 1999) ........ 4, 9, 12

*Wilson v. Belin*,
20 F.3d 644 (5th Cir. 1994) ........ 5

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ........ 5

*Zyla Life Sciences, L.L.C. v. Wells Pharma of Houston, L.L.C.*,
134 F.4th 326 (5th Cir. 2025) ........ 18

**Rules**

Fed. R. Civ. P. Rule 12(b)(2) ........ 1, 17, 20

Fed. R. Evid. 201(b) ........ 16

**Constitutional Provisions**

First Amendment ........ 14, 16, 19, 20

## INTRODUCTION

Now come Plaintiffs in the above-captioned matter and, by undersigned counsel, respectfully oppose the state medical board Defendants' Motions to Dismiss Plaintiffs' First Amended Complaint ("FAC") under Fed. R. Civ. P. Rule 12(b)(2) for lack of personal jurisdiction. As reasons therefor, Plaintiffs state that the conspiracy pleaded in Count II and the overt acts thereof pleaded in Count I of the FAC were related to or arose out of the state medical board Defendants' contacts with the Northern District of Texas. Plaintiffs further state that persona jurisdiction over the state medical board Defendants is fair and reasonable because their conspiracy, as pleaded in Count II of the FAC, projects across state lines and asserts a pseudo-national executive authority to prohibit licensed physicians from disseminating non-consensus viewpoints concerning medical information.

## RELEVANT FACTS

The relevant facts, as alleged in the FAC are that the conspiracy tort alleged in Count II was related to or arose out of the state medical board Defendants' contacts with Euless, Texas by means of their travel and virtual communications for the purposes of reaching an agreement to discriminate based on medical licensees' non-consensus viewpoints concerning "medical information"; and that the overt actions of the state medical board Defendants to restrict Plaintiffs' licenses based on such viewpoints, as alleged in Count I, were related to or arose out of this agreement. *See, generally,* FAC, ¶¶ 1-19, 68-98, 266-70, 291-93, 306-24, 345-84, 496-97, 531-32.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. In resolving a Rule 12(b)(2) motion, the Court

may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allstate Ins. Co. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 505-506 (N.D. Tex. 2014) (quotation marks omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a prima facie case for personal jurisdiction.
>
> *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). *See also Pearson v. Shriners Hosps. for Children, Inc.*, 133 F.4th 433, 442 (5th Cir. 2025).

## ARGUMENT

### I. The Test for Specific Personal Jurisdiction

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with due process under the United States Constitution." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). "As the Texas long-arm statute extends to the limits of federal due process, these two steps conflate" in the Northern District of Texas. *See Latshaw*, 167 F.3d at 211. Federal due process permits personal jurisdiction over a nonresident defendant that has "minimum contacts" with the forum state, subject to the limit of not offending "traditional notions of fair play and substantial justice." *See McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quotation marks omitted).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). *See also Luv N'care v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

> Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.
>
> *Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (quotation marks omitted).

Plaintiffs' complaint alleges specific jurisdiction in the Northern District of Texas over a common law tort and a constitutional tort arising out of or related to the state medical board Defendants' contacts with Euless, Texas through travel and virtual communications. *See, generally,* FAC, ¶¶ 1-19, 68-98, 266-70, 291-93, 306-24, 345-84, 496-97, 531-32. *Cf. Jackson*, 615 F.3d at 584.

The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.
>
> *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).

The inquiry is "claim-specific," to the extent that a plaintiff "bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *See McFadin*, 587 F.3d at 759. Moreover,

> the minimum-contacts test for personal jurisdiction in tort differs from that in contract. A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum. The proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation.
>
> *Hall v. Tone Knows, Inc.,* No. 3:24-cv-3273-K, 2025 U.S. Dist. LEXIS 269780, at *15-16 (N.D. Tex. Dec. 3, 2025).

### A. Communications into Forum Are Sufficient Claim-Related Contacts for Tort Claims

The first step of determining minimum contacts

> is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court. The defendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person.

*McFadin*, 587 F.3d at 759 (internal citations and quotation marks omitted).

It is true that, in some contract claims, "mere communications or negotiations with a resident of the forum state were not enough to subject non-resident defendants to the forum state's jurisdiction." *See Lewis*, 252 F.3d at 359 (citing *Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir. 1992) (per curiam) (one telephone call and one letter not enough to confer personal jurisdiction).). The mere communications cases "did not, however, involve an intentional tort," *Lewis*, 252 F.3d at 359, and, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). *See also Defense Distributed v. Grewal*, 971 F.3d 485, 495 (5th Cir. 2020) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, S.F. Cty., 137 S. Ct. 1773, 1780 (2017) (holding that for intentional tort liability to attach, "[t]here must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.").); B*rown v. Flowers Indus.*, 688 F.2d 328, 332-33 (5th Cir. 1982) (holding that a single telephone call initiated by the defendant was sufficient to confer personal jurisdiction); *Hall*, 2025 U.S. Dist. LEXIS 269780, at *16.

### B. Causation Is Unnecessary to Show that Claim Arises Out of or Results from Claim-Related Contacts

The "arises/related" second step of the specific jurisdiction analysis is an either/or inquiry:

> The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. . . . [The U.S. Supreme Court has] never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff 's claim came about because of the defendant's in-state conduct."
>
> *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021).

In a pre-*Ford* case, the Southern District of Texas had applied a more stringent "but-for-plus" test for the arises/results inquiry, in which the "'causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.'" *See Breathwit Marine Contrs., Ltd. v. Deloach Marine Servs.*, LLC, 994 F. Supp. 2d 845, 852 (S.D. Tex. 2014) (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007).). Yet even under the more stringent standard in *Breathwit*, *supra at 852*, the "[a]pplication of the 'but-for-plus' approach can result in a finding of specific jurisdiction outside the forum where the tort took place." *Id.* Under *Ford*'s relaxation of the "related to" standard, specific jurisdiction also can attach even outside the forum where the injury occurred. *See Bibbs v. Molson Coors Bev. Co.*, 616 F. Supp. 3d 606, 614-615 (N.D. Tex. 2022) (also noting that the "but-for-plus" approach is more stringent than Ford).

The burden of the last step of the specific jurisdiction analysis rests on the defendant:

> If the first two elements [of specific jurisdiction] are met, the Court then asks the defendant to make a "compelling case" that the assertion of jurisdiction would not be fair or reasonable. In making this determination, the Court considers the following factors: "(1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several States in furthering fundamental substantive social policies.
>
> *Bibbs*, 616 F. Supp. 3d at 615-616 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Carmona*, 924 F.3d at 193; *Wilson v. Belin*, 20 F.3d 644, 647 n.3 (5th Cir. 1994).).
> .

### C. Fairness and Federalism Do not Preclude Personal Jurisdiction over Foreign State Officials Who Have Projected Themselves Across State Lines and Asserted a Pseudo-National Executive Authority

"[Fairness] considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Also, "[m]ost such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the 'fundamental substantive social policies' of another State may be accommodated through application of the forum's choice-of-law rules." *Id.*

The principle underlying the first fairness factor is that "jurisdictional rules may not be employed in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* at 478. (quotation marks omitted). Where a plaintiff seeks to assert personal jurisdiction over a foreign state official, the last fairness factor, "the shared interest of the several states is the most significant reasonableness consideration outlined by the Supreme Court. . . Accordingly, the reasonableness of asserting jurisdiction over a defendant must be assessed in the context of our federal system of government." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 488 (5th Cir. 2008) (internal citations and quotation marks omitted). Nevertheless, personal jurisdiction over an out-of-state official defendant has been found when such an official sent "a cease-and-desist letter to an in-state plaintiff where either (1) the plaintiff's claims are based on injuries stemming directly from the letter, and/or (2) the letter seeks to completely proscribe plaintiff from performing an activity nationwide or in the forum state." *See Carbon Six Barrels, LLC v. Proof Rsch., Inc.*, No. 22-CV-90-SDD-RLB, 2022 U.S. Dist. LEXIS 200931, at *10 (M.D. La. Nov. 4, 2022) (*citing Grewal*, 971 F.3d at 492.).

The key distinguishing factor in *Grewal*, *supra,* was that the out-of-state official defendant had "projected himself across state lines and asserted a pseudo-national executive authority that the public official in *Stroman*[, 513 F.3d at 487] never asserted." *See Grewal*, 971 F.3d at 493.

## II. Defendants' Claim-Related Contacts Establish Personal Jurisdiction for Both the Constitutional and the Common Law Tort Claims

"Fifth Circuit precedent states that to establish personal jurisdiction over a defendant-conspirator, the plaintiff must allege either: (1) that the conspiracy was related to or arose out of the defendant-conspirator's contacts with the forum state; or (2) that the actions of the defendant-conspirator were related to or arose out of the defendant-conspirator's contacts with the forum state." *National Architectural Prods. Co. v. Atlas-Telecom Servs. - USA, Inc.*, No. 3:06-CV-0751-G ECF, 2007 U.S. Dist. LEXIS 51182, at *23 (N.D. Tex. July 13, 2007) (citing *Delta Brands Inc. v. Danieli Corporation*, 99 Fed. App'x 1, 6 (5th Cir. 2004).).

### A. State Medical Board Defendants Both Traveled into and Communicated with the Forum with the Purpose of Agreeing to Discriminate Based on Viewpoint

Defendant state medical boards generally misrepresent Plaintiffs' jurisdictional argument as the claim this Court has specific jurisdiction "solely because one of the *other* defendants, the Federation, is headquartered in Euless, Texas." *See, e.g.*, Dkt. No 132 at 13. This is inaccurate. Plaintiffs claim that the Defendants' agreement to discipline licensees for "the dissemination of misinformation in the clinic or in public, as integrated in the FSMB Censorship Policy, *see* FAC, ¶¶ 1-12, and the actions of the Defendant state medical boards to restrict Plaintiffs' medical licenses based on Plaintiffs' professional viewpoints, see  were related to or arose out of the Defendant state medical boards' contacts with the FSMB's headquarters in Euless, Texas. *Cf. National Architectural Prods. Co.*, 2007 U.S. Dist. LEXIS 51182, at *23. Plaintiffs do plead that

Kirchmeyer traveled to Texas for her FSMB roles, including for claim-related contacts and as part of her own agreement with Defendant Dean, when Kirchmeyer,

> and other members of the FSMB national leadership agreed at the FSMB national headquarters in Euless, Texas that the FSMB would pressure the MBC, as well as Member Medical Boards . . . to discipline physicians for writing medical exemptions from childhood vaccinations based on reasons not recommended under the pre-2025 ACIP/AAP consensus.
>
> FAC, ¶¶ 308-10

The Washington defendants inadvertently directly confirm this previously largely circumstantial theory in their brief, where they admit that the FSMB's COVID-19 Censorship Statement was developed by the FSMB with "the California Medical Board, the FDA, and the CDC."[1] *See* Dkt. No. 129 at 3. As alleged in the FAC, California was the original source of medical censorship efforts, which began even before COVID-19. *See* FAC, ¶¶ 13-14.

And, contrary to all the state medical board Defendants' assertions, they did not merely conspire with a resident of the Northern District of Texas to restrict medical licenses based on licensees' professional viewpoints. As Plaintiffs plead in the FAC, the state medical board Defendants physically traveled to the forum so to conspire. *See id.*, ¶ 239. *Cf. Grewal*, 971 F.3d at 495; *Hall*, 2025 U.S. Dist. LEXIS 269780, at *16 (finding lack of personal jurisdiction) ("For instance, [plaintiffs] do not allege that any party was present in Texas when the calls and meetings between them and TONE occurred."). According to the FAC, the FSMB's "headquarters in Euless, Texas were the physical locus of all Defendants' agreement" constituting the first element of the conspiracy claim in Count II. FAC, ¶ 239. The state medical board Defendants' own home states later became the physical loci of the conspiracy's primary

---

[1] The U.S. Food and Drug Administration and Centers for Disease Control's role in this censorship effort is beyond the scope of this complaint. *See, generally, Murthy v. Missouri*, 603 U.S. 43, 51-53 (2024).

overt acts, including the direct violations in Count I. *See id.*, ¶¶ 531-32. *Cf. McFadin*, 587 F.3d 753, 759 (5th Cir. 2009); *National Architectural Prods. Co.*, 2007 U.S. Dist. LEXIS 51182, at *23. Defendants' agreement to commit the violations in Count I occurred in the Northern District of Texas. *See* FAC, ¶ 239, 307-15, 345-84. The agreement, as it relates to the conspiracy among the Defendants, the litigation, and the forum, is not a contract negotiated within the Northern District of Texas, *cf. Lewis*, 252 F.3d at 359, but an extended series of forum-directed communications by the state medical board Defendants between 2018 and 2022, as ultimately integrated into the FSMB Censorship Policy and ratified by the state medical board Defendants, which gave rise or resulted in both the intentional common law and constitutional torts claimed in the instant litigation. *Cf. McFadin*, 587 F.3d at 759; *Wien Air*, 195 F.3d at 213; *National Architectural Prods. Co.*, 2007 U.S. Dist. LEXIS 51182, at *23. *See also Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002) ("§ 1983 is a tort statute. . .").

It is irrelevant whether or not "the effect of that conspiracy was felt in Texas." *See National Architectural Prods. Co.*, 2007 U.S. Dist. LEXIS 51182, at *23. The relevant facts are that "the conspiracy was related to or arose out of the [state medical board Defendants'] contacts with the forum state [through travel and virtual communications for purposes of an agreement to discriminate based on medical licensees' viewpoints]"; and that the overt "actions of the [state medical board Defendants to restrict Plaintiffs' licenses based on viewpoints] were related to or arose out of the [same]." *Cf. id.*

The state medical board Defendants' physical presence in the forum was not necessary "[w]hen the actual content of [their] communications with a forum g[ave] rise to intentional tort causes of action." *Cf. Wien Air*, 195 F.3d at 213 (5th Cir. 1999). *See also Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780; *Grewal*, 971 F.3d at 495. In the instant case, the occurrence of their

Euless-directed communications, as ultimately integrated into the FSMB Censorship Policy and ratified by the state medical board Defendants, *see* FAC, ¶ 239, 307-15, 345-84, gave rise to both the constitutional torts in Count I and the conspiracy tort in Count II. *Cf. Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780; *McFadin*, 587 F.3d at 759. Jurisdiction is not defeated just because the conspiracy tort was agreed upon but completed outside of the forum, or because the constitutional torts arose or resulted from an agreement made in the forum, but ultimately were committed outside. *Cf. Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) ("Even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact.")

Even if the Defendants' agreement to restrict medical licenses based on licensees' professional viewpoints had been negotiated entirely through video conferences organized by the FSMB out of the Euless headquarters, such as the February 1, 2022 virtual "town hall event" held to discuss the FSMB Censorship Policy, where participation was limited "exclusively for the leadership of our state and territorial medical boards," with more than sixty individuals attending, *see* FAC, ¶¶ 371-74—then specific jurisdiction still would attach. *Cf. Baldwin v. Taishang Gypsum Co.*, Ltd., 742 F.3d 576, 588 (5th Cir. 2014) ("Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State.") (quoting *Burger King*, 471 U.S. at 476). Contrary to the MBC's attempt to shoehorn such virtual communications into a passive cloud storage access analysis[2], participants in town hall meetings,

[2] The MBC's cloud storage access analysis is otherwise inapplicable because it requires the defendant to be unaware of the specific location of the cloud storage server—and it is not disputed that Defendants were aware that the FSMB is located in Euless. *See NavSav Holdings, LLC v. Beber*, 724 F. Supp. 3d 615, 630 (E.D. Tex. 2024) (contract claim) ("[D]efendant purposefully availed herself of the privilege of conducting activities within Connecticut because

even virtual ones, are, by definition, not merely "passive observer[s] of information." *See* Dkt. No. 132 at 17.

It also must be noted that, while the FSMB Censorship Policy was directly ratified by a vote of the FSMB's Member Medical Boards, *see* FAC, ¶ 384, the entire sequence of agreements, statements, and policies to restrict medical licenses based on licensees' professional viewpoints, starting with the agreement between Defendant Kirchmeyer and the FSMB's national leadership in 2018, had the force of an agreement among all Member Medical Boards, the Defendant state medical boards included. Under the FSMB's by-laws, the "House of Delegates is the official public policy-making body of the FSMB," and "[t]he right to vote at meetings of the House of Delegates is vested in, and restricted to, Member Medical Boards," with each getting one vote. *See* FAC, ¶ 74. However, during the period "[i]n between Annual Meetings of the House of Delegates, control and administration of the FSMB is vested in the Board of Directors, which acts for the FSMB as a whole." *See* FAC, ¶ 80. Thus, the agreement between Kirchmeyer and the FSMB at its Euless headquarters, "[d]uring the summer of 2020," to adopt "California's physician censorship policies in a series of public statements" throughout 2020-21, "culminating with the 2022 FSMB Censorship Statement, is binding on Defendant state medical boards. See id., ¶ 80, 312. The FSMB Board's unanimous approval of the 2021 FSMB Censorship Statement indicates that support among its Member Medical Boards for the unlawful conduct threatened therein was extremely high. See FAC, ¶ 346. Therefore, the Defendants' forum-based conspiracy to commit the overt acts in Count I, as pleaded in Count II, constitutes

---

she was aware of the centralization and housing of the companies' e-mail system and the storage of confidential, proprietary information and trade secrets' in Waterbury, Connecticut.") (quotation marks omitted). (emphasis added).

sufficient minimum contacts for both Counts. *Cf. Monkton*, 768 F.3d at 433; *McFadin*, 587 F.3d at 759; *Wien Air*, 195 F.3d at 213; *National Architectural Prods. Co.*, 2007 U.S. Dist. LEXIS 51182, at *23

**B. The Defendants' Agreement to Conspire and the Overt Acts of the Defendant State Medical Boards Were Related to or Arose out of Their Contacts with the Forum**

While the specific jurisdiction inquiry does not always require showing that "the plaintiff's claim came about because of the defendant's in-state conduct," *cf.* Ford, 592 U.S. at 362, the FAC pleads that both Count I and II were proximately caused by the Defendants' conduct while all Defendants were physically present in or in interactive virtual communication with the FSMB headquarters in Euless. Cf. id; *Breathwit*, 994 F. Supp. at 852. *See* FAC, ¶ 239, 307-15, 345-84. Thus, through whatever combination of physical or virtual contacts with the forum, the agreement portion of the conspiracy Count II was completed there. As part of Count II, Plaintiffs plead that the overt acts of the conspiracy, which are the same as the constitutional torts in Count I, although completed elsewhere, were proximately caused by this agreement, *see* FAC, ¶ 538, which is far more causation than the result/arise standard requires. *Cf. Ford*, 592 U.S. at 362; *Bibbs*, 616 F. Supp. 3d at 614-615.

Some Defendants argue that Defendants Kirchmeyer and Dean's California-based agreement and activities, which resulted in MBC staff investigating Plaintiff Sutton in 2016 and Plaintiff Humiston in 2019, was an entirely independent cause of these Plaintiffs' subsequent and revocation of their medical licenses based on their professional viewpoints supporting childhood vaccine exemptions based on family history of adverse vaccine reactions. *See, e.g.*, Dkt. No. 135 at 5. *Cf. Pearson*, 133 F.4th at 442; Latshaw, 167 F.3d at 211. However, Plaintiffs plead in the FAC that these investigations did not more forward to disciplinary action because the members

of the MBC felt in 2019 that "family history" and "genetic predisposition supported by genetic testing," were appropriate reasons for exemption from California's childhood immunization requirements. *See* FAC, ¶ 306-10. According to the FAC, it was only after "Kirchmeyer joined and enlisted the help of the FSMB's national leadership in Euless, Texas," that she and Dean could "overcome the MBC board members' initial opposition to disciplining doctors for writing medical exemptions based on [non-consensus] reasons. . ." *Id.* at 308. According to the FAC's theory of the conspiracy in Count II, Kirchmeyer and MBC's forum-related contacts with the FSMB's national leadership in Euless, Texas, caused this change in the MBC's policy. *Cf. Ford*, 592 U.S. at 362; *Bibbs*, 616 F. Supp. 3d at 614-615; *Breathwit*, 994 F. Supp. at 852.

To the extent Defendants argue that the state medical board Defendants' own state medical practice acts and disciplinary procedures, including reciprocal discipline requirements, as well as Plaintiffs' non-speech conduct, constitute superseding causes for Plaintiffs' discipline, as pleaded in Count I, *cf. Breathwit*, 994 F. Supp. at 852; *Humble Oil & Ref. Co. v. Whitten*, 427 S.W.2d 313, 315 (Tex. 1968) (describing Texas definition of superseding cause), the facts in the FAC and the law concerning viewpoint discrimination contradict this argument.

As pleaded in the FAC, the FSMB Censorship Policy encouraged state medical boards to "consider the full array of authorized grounds for disciplinary action in their Medical Practice Acts," FAC, ¶ 7, as a means to "cobble[] together" various "speech-incident-to-conduct" reasons to discipline physicians based on their viewpoints. *Cf. Chiles v. Salazar*, 607 U.S. 627, 639, 651 (2026) (finding that efforts to recast speech as "professional conduct" amounted to little more "than a labeling game."). "[D]iscrete traditions of content-based regulations cannot be aggregated together to sustain some new and broader category of lesser-protected speech." *Id.*

All of the following "'[a]dditional grounds for disciplinary action that could relate to the dissemination of misinformation but are not necessarily directly related to fraud or deceit,'" FAC, ¶ 11, which the FSMB Censorship Policy suggested should be used by those state medical boards concerned about "facing challenges on First Amendment grounds for disciplinary action that restricts a physician's right to speech," *see id.*, appear as pretexts in Defendants briefs:

- Failure to adequately obtain informed consent by not providing adequate or truthful information to patients about proposed treatments. [*See* Dkt. No. 132 at 10; Dkt. No. 129 at 5-6; Dkt. No. 135 at 2.]
- Failure to adhere to an applicable standard of care. [*See* Dkt. No 129 at 5-7, 24; Dkt. No. 132 at 9; Dkt. No. 124 at 13-14; Dkt. No 122 at 9, 17; Dkt. No. 135 at 2.]
- Engaging in conduct that is likely to bring the profession into disrepute (unprofessional conduct). [See Dkt. No. 127 at 17[3]; Dkt. No. 135 at 2.]
- Engaging in unethical conduct by harming the public. [*See* Dkt. No. 129 at 4, 6; Dkt. No. 135 at 2.]
- Using experimental forms of therapy without proper informed patient consent, without conforming to generally accepted criteria or standard protocols, or without proper periodic peer review of results. [*See* Dkt. No. 132 at 9-10.]

The FSMB said it most succinctly:

> The discipline Plaintiffs challenge was imposed by independent state boards for reasons those boards treated as professional conduct, including vaccine-exemption practices, documentation and informed-consent issues, failure to complete remediation, reciprocal

[3] The Texas Defendants are the most specious in characterizing Plaintiff Bowden's speech as conduct in their brief, where they claim that their disciplinary "proceeding began with hospital complaints about conduct: a physician without privileges dispatching her nurse to an ICU, and the police response that followed." *See* Dkt. No. 127 at 16. As stated in the FAC, ¶¶ 422, 439, however, the hospital's complaint actually had been filed prior to the nurse's visit to the ICU and concerned a "hand-delivered application for Temporary Restraining Order (TRO) filed in Tarrant County, Texas" by a patient's wife against the hospital, in which action Dr. Bowden testified as an expert concerning the safety and efficacy of ivermectin for the treatment of COVID-19. *See* FAC, ¶¶ 422-27. Expert court testimony on matters of public health is protected speech, not conduct. *See, e.g.*, *Hoover v. Morales*, 164 F.3d 221, 226 (5th Cir. 1998). And, it was the Tarrant County court that dispatched Dr. Bowden's nurse to the hospital with its preliminary injunction "solely to administer Ivermectin to Jason Jones, pursuant to the order and the attached Prescription of Dr. Bowden." *See* FAC, ¶¶ 436-37. Lastly, the FAC states that the police response that followed was not disruptive, that the nurse left as soon as she was asked to, and that the nurse's own professional licensing agency did not pursue the hospital's complaint about the incident. *See id.*, ¶¶ 441-48, 450, 470-71.

> or followon discipline, hospital-privileges and disruptive-conduct allegations, and patient-care charges."[4]
>
> Dkt. No. 135 at 2.

"Viewpoint discrimination exists 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).). *See also Eriakha v. University of Miss.*, No. 3:25-cv-00226-MPM-JMV, 2026 U.S. Dist. LEXIS 143396, at *27 (N.D. Miss. June 29, 2026) (noting that a viewpoint discrimination claim contemplates preexisting restrictions and policies whose purpose or motive is to restrict a viewpoint, while a viewpoint retaliation claim contemplates ad hoc punishment subsequent to and motivated by an already-stated viewpoint). Viewpoint discrimination claims require showing a discriminatory motive or purpose for the restrictive policy, regardless of its pretext. *See Heaney*, 846 F.3d at 802.

Whatever the state medical board Defendants' stated reasons for discipline, since the underlying motivation or purpose of all of these "[a]dditional grounds for disciplinary action" was to restrict "the dissemination of misinformation,"[5] as the FSMB Censorship Policy directly admits, *see* FAC, ¶¶ 1-12, then these very same reasons are not superseding causes, but mere pretexts for an improper motive to discriminate based on viewpoint. *See Fierros v. Texas Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001) (finding in the Title VII context that "direct evidence [of improper motive] includes any statement or written document showing a discriminatory

---

[4] *Cf. Chiles*, 607 U.S. at 667-669, 683-689, 692 (Jackson, J, dissenting) (suggesting that States may ban "substandard care" provided "via speech" in light of licensing, informed consent, and malpractice laws).

[5] *Cf. Rosenberger*, 515 U.S. at 829-830 (explaining that viewpoint discrimination is an "egregious form of content discrimination" and is "presumptively unconstitutional"); *Heaney*, 846 F.3d at 802.

motive on its face.”). *Cf. Rosenberger*, 515 U.S. at 829-830 (explaining that viewpoint discrimination is an “egregious form of content discrimination” and is “presumptively unconstitutional”); *Heaney*, 846 F.3d at 802. *Cf. also Lozman v. City of Riviera Beach*, 585 U.S. 87, 91 (2018) (finding that presence of probable cause does not bar a First Amendment retaliatory arrest claim if a plaintiff can prove the “existence and enforcement of an official policy motivated by retaliation”).

Indeed, all of the Defendants who reciprocally disciplined some of the Plaintiffs did so on viewpoint. Contrary to the New York Defendants’ claim that “[n]othing in the New York Board’s determination revoking Dr. Sutton’s license indicates that it was motivated by Dr. Sutton’s viewpoint opposing/criticizing vaccinations,” *see* Dkt. No. 122 at 17-18, the New York Defendants revoked Plaintiff Sutton’s license as part of reciprocal discipline based on the fact that “Dr. Sutton issued permanent vaccine exemptions for eight pediatric patients from 2016 – 2018 that did not comply with the standard of care and vaccine guidelines at the time,” and that this conduct would “constitute misconduct under the laws of New York State,” thereby discriminating against Plaintiff Sutton’s viewpoint opposing vaccinations for those eight pediatric patients under the color of the laws of New York.[6] *Cf. Heaney*, 846 F.3d at 802; 42 U.S.C. § 1983.

In doing the same under their own laws, the Massachusetts defendants cited the aforementioned pretexts and the fact that Plaintiff Sutton “issued immunization exemptions to

---

[6] *See* Physician Information, New York Department of Health (accessed August 11, 2026), https://apps.health.ny.gov/pubdoh/professionals/doctors/conduct/factions/FileDownloadAction.action?finalActionId=13563&fileName=HRG+150168.pdf&fileSeqNum=1. The Court may take judicial notice of these materials because they are public government records that are not subject to reasonable dispute and are incorporated by reference into the First Amended Complaint, ¶ 399. *See* Fed. R. Evid. 201(b).

eight children for improper reasons." *See* FAC, ¶ 396. Separately, the Massachusetts Defendants reciprocally disciplined Plaintiff Brody for "false and misleading statements concerning the safety and efficacy of the COVID-19 vaccinations." *See id.*, ¶ 398. The Indiana Defendants reciprocally disciplined Plaintiff Humiston for "his issuance of vaccine exemptions for all childhood vaccines when no set of circumstances justified the issuance of such exemptions." *See* id. at 405.

On the face of the FAC, the proximate (or at least a but-for-plus) cause for Plaintiffs' discipline remains the Defendants' Euless-based agreement to restrict "the dissemination of misinformation" by cobbling together existing traditions of content-based regulations; and this Euless-based agreement certainly resulted in Plaintiffs' discipline, if not directly caused it. See FAC, ¶¶ 11-12. *Cf. Chiles*, 607 U.S. at 639; *Ford*, 592 U.S. at 362; *Monkton*, 768 F.3d at 433; *Bibbs*, 616 F. Supp. 3d at 614-615; *Breathwit*, 994 F. Supp. at 852.

To the extent that Defendants raise in their defense any dispute concerning "whether [the state medical board Defendants] acted on an improper motive," such as the ones identified in the FAC, ¶ 11, this is "a factual dispute that should be resolved by a jury," and not at the pleading stage, even if on a Fed. R. Civ. P. Rule 12(b)(2) motion. *See Heaney*, 846 F.3d at 802.

### C. Personal Jurisdiction Over Defendant Foreign State Officials Is Fair and Reasonable Because the FAC Alleges They Seek to Completely Proscribe Non-Consensus Professional Medical Viewpoints Nationwide

Only the New York, Rhode Island, and Washington Defendants reach the "fair or reasonable" factor of the personal jurisdiction analysis in their briefs. *See* Dkt. No. 119 at 11-12, Dkt. No. 122 at 7, Dkt. No. 129 at 13-14. They fail to make a compelling case. *Cf. Bibbs*, 616 F. Supp. 3d at 615-616. The burden upon the nonresident defendant is a relative inquiry "in comparison to his opponent." *See* Burger King, 471 U.S. at 478 (quotation marks omitted). In the

instant case, the Plaintiffs and Defendants all face a similar burden of litigating in the Northern District of Texas. The three Plaintiffs with direct claims against New York, Rhode Island, and Washington are domiciled in Rhode Island and Washington. *See* FAC, ¶¶ 44-45 294, 319, The Plaintiffs' lead counsel's practice is in Massachusetts. Lastly, the state medical board Defendants already have extensive claim- and non-claim-related contacts with the Northern District of Texas through their membership in the FSMB. *See* FAC, 68-98.

There are two categories of interests of the forum state in the instant litigation that go beyond the forum-located Defendant FSMB. *Cf.* B*ibbs*, 616 F. Supp. 3d at 615-616. First, more generally, states "have a legitimate interest in punishing or providing redress for wrongs," including for civil violations like the conspiracy tort in Count II, with the actionable agreement to violate the law having been reached within the jurisdiction. *See Zyla Life Sciences, L.L.C. v. Wells Pharma of Houston, L.L.C.*, 134 F.4th 326, 333 (5th Cir. 2025). Second, the elected branches of the Texas government have a direct interest in the instant litigation that aligns with the Plaintiffs' interests, and not the Defendants', the Texas Defendants included. Both the Texas House of Representatives and Texas Attorney General Ken Paxton officially have expressed their support for Plaintiff Bowden's side of the instant controversy—the latter by refusing to defend TMB in this matter explicitly "in support of Mary Talley Bowden." *See* FAC, ¶ 488; Dkt. No. 28, Ex. A.

Both the Plaintiffs' interest in securing relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies are aligned to make jurisdiction in the Northern District of Texas fair and reasonable. *Cf. Bibbs*, 616 F. Supp. 3d at 615-616. If Plaintiffs bring their conspiracy claims piecemeal in the state medical board Defendants' jurisdictions, where the overt acts of the conspiracy occurred, their individual cases that there is a nationwide

agreement by *all* state medical boards to commit the overt acts become less compelling.[7] This piecemeal approach also is likely to create inconsistent results.

It is ironic for the New York Defendants to argue that "there is no shared state interest in furthering a fundamental social policy because each state retains autonomy over its own regulation of medical and other professional licenses," see Dkt. No. 122 at 7, given that the state medical board Defendants and their counterparts in other states organized the FSMB explicitly to "protect and promote uniformity in the administration of medical practice acts." See FAC, ¶ 70. However, the fundamental social policy at issue in the instant matter is not the administration of medical practice acts. It is freedom of speech. "[A]ssuring that the public has access to a multiplicity of information sources is a governmental purpose of the highest order, for it promotes values central to the First Amendment." *Turner Broadcasting Sys. v. FCC*, 512 U.S. 622, 663 (1994). *See also Chiles*, 607 U.S. at 655 ("Colorado may regard its policy as essential to public health and safety. Certainly, censorious governments throughout history have believed the same. But the First Amendment stands as a shield against any effort to enforce orthodoxy in thought or speech in this country.").

Analogous to *Grewal*, 971 F.3d at 492, because the Plaintiffs' "claims are based in injuries stemming directly from the" FSMB Censorship Policy and its predecessor agreements, and because the FSMB Censorship Policy "seeks to completely proscribe [Plaintiffs] from" stating or publishing non-consensus medical viewpoints "nationwide," the exercise of personal jurisdiction over the Defendant foreign state officials is fair and reasonable. *Cf. also Carbon Six*

[7] Say Al Capone and other Chicago mobsters travel to Las Vegas to agree to commit crimes across the country. Does it not make most sense to try them at the physical locus of the agreement instead of piecemeal across the country or in their domicile state of Illinois, where only some portions of the agreement's overt acts occurred?

*Barrels*, 2022 U.S. Dist. LEXIS 200931, at *10. Plaintiffs are not challenging the validity of any state laws, as theirs is not a facial, but an as-applied challenge. *Cf. Stroman*, 513 F.3d at 488. They're challenging a nationwide agreement to violate their First Amendment rights under the color of those laws by using those laws as pretexts with the underlying purpose of restricting or "suppressing" Plaintiffs' "non-consensus" professional viewpoints. *See* FAC at ¶ 531. *Cf. Chiles*, 607 U.S. at 644-645. Therefore, the exercise of personal jurisdiction over all Defendants is fair and reasonable. *Cf. Grewal*, 971 F.3d 485 at 492; *Monkton*, 768 F.3d at 433; *Carbon Six Barrels*, 2022 U.S. Dist. LEXIS 200931, at *10.

**CONCLUSION**

Because Plaintiffs have presented a a prima facie case for personal jurisdiction, and because no fairness considerations prevent it, the Defendants' motions to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(2) should be denied. *Cf. Grewal*, 971 F.3d *at 492; Latshaw*, 167 F.3d at 211.

Dated: August 12, 2026

Respectfully submitted,

Ilya I. Feoktistov (*pro hac vice*)
Law Office of Ilya Feoktistov
60 Burnham Dr.
Falmouth, MA 02540
Telephone: 617-462-7938
Email: if@ilyafeoktistov.com

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered as CM/ECF users, on this August 12, 2026.

Ilya Feoktistov