IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MARY KELLY SUTTON, JOHN HUMISTON, MARY TALLEY BOWDEN, MARK BRODY, RICHARD WILKINSON, PHYSICIANS AND PATIENTS RECLAIMING MEDICINE,<br>Plaintiffs,<br><br>v.<br><br>FEDERATION OF STATE MEDICAL BOARDS, INC., KATIE TEMPLETON, KENNETH SIMONS, MEDICAL BOARD OF CALIFORNIA, KIMBERLY KIRCHMEYER, RHODE ISLAND BOARD OF MEDICAL LICENSURE AND DISCIPLINE, NICOLE ALEXANDER-SCOTT, TEXAS MEDICAL BOARD, SHERIF ZAAFRAN, MASSACHUSETTS BOARD OF REGISTRATION IN MEDICINE, JULIAN ROBINSON, NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, ANDREW MERRITT, MEDICAL LICENSING BOARD OF INDIANA, JOHN STROBEL, WASHINGTON MEDICAL COMMISSION, CLAIRE TRESCOTT, CHARITY DEAN,<br><br>Defendants. | No. 4:25-cv-01230-P |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER ORDER DENYING FINAL MOTION TO EXTEND TIME**

Plaintiffs move under Federal Rule of Civil Procedure 54(b) for reconsideration of the Honorable Court's August 17, 2026 interlocutory order denying Plaintiffs' Final Motion to Extend the Time to Respond to Defendants' Motions to Dismiss and striking Plaintiffs' Fed. R. Civ. P. Rule 12(b)(1) response. Plaintiffs respectfully request that the Court grant the requested extension under Fed. R. Civ. P. Rule 6(b)(1)(B), reinstate the Fed. R. Civ. P. Rule 12(b)(1) response filed August 16, 2026, and permit any remaining response to be filed by September 21, 2026.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

RELEVANT PROCEDURAL BACKGROUND ........ 2

LEGAL STANDARD ........ 5

I. Rule 54(b) Governs Reconsideration ........ 5

II. Rule 6(b)(1)(B) Requires Good Cause and Excusable Neglect ........ 6

III. Fed. R. Civ. P. Rule 16(c)(2)(L) Supports Tailored Management of Actions Involving Complex Issues and Multiple Parties ........ 9

ARGUMENT ........ 9

I. B. The Abbreviated Schedule and Exceptional Scope of the Motions Materially Explain the Delay ........ 9

II. Defendants Would Not Suffer Cognizable Prejudice. ........ 11

III. The Delay Was Minimal and Had Little Practical Effect on the Proceedings ........ 13

IV. Plaintiffs Acted Diligently and in Good Faith. ........ 14

V. The Complete Equitable Circumstances Warrant Reconsideration. ........ 16

VI. F. The Requested Relief Is Proportionate and Consistent with Efficient Docket Management. ........ 18

CONCLUSION AND PRAYER FOR RELIEF ........ 20

CERTIFICATE OF SERVICE ........ 21

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Travelers Indem. Co.*,

465 F.3d 156 (5th Cir. 2006) .......... 8, 14, 17

*Alvarado v. BP Expl. & Prod., Inc. (In re Deepwater Horizon)*,

988 F.3d 192 (5th Cir. 2021) .......... 7, 9, 13, 14, 18, 19

*Austin v. Kroger Tex., L.P.*,

864 F.3d 326 (5th Cir. 2017) .......... 5, 6, 18

*Blythe v. Offshore Serv. Vessels, LLC*,

423 F. Supp. 3d 299 (E.D. La. 2019) .......... 19

*Boberg v. Pethick*,

Civil Action No. 3:20-CV-3649-L, 2023 WL 4306734 (N.D. Tex. June 30, 2023) .... 14, 15, 16

*Brown v. City of Houston*,

2018 WL 1333883 (S.D. Tex. 2018) .......... 5, 6, 18

*Conley v. Gibson*,

355 U.S. 41 (1957) .......... 7

*Curtiss-Wright Corp. v. General Elec. Co.*,

446 U.S. 1 (1980) .......... 9, 14, 18

*Fairley v. Wal-Mart Stores, Inc.*,

2016 WL 9582711 (E.D. La. 2016) .......... 19

*Germania Farm Mut. Ins. Co. v. Deere & Co.*,

No. 2:19-CV-227-Z-BR, 2021 WL 8155255 (N.D. Tex. May 11, 2021).................................. 8

*Hill v. First Tenn. Bank, N.A.*, Civil Action No. 3:17-CV-1298-L, 2018 WL 2427146 (N.D. Tex. May 30, 2018)........................................................................................................ 9, 11, 17

*Lowry v. McDonnell Douglas Corp.*,

211 F.3d 457 (8th Cir. 2000) ............................................................................................ 8, 10

*McClendon v. United States*,

892 F.3d 775 (5th Cir. 2018) ........................................................................................ 5, 6, 18

*Midwest Employers Cas. Co. v. Williams*,

161 F.3d 877 (5th Cir. 1998) ............................................................................................ 6, 16

*Murphy v. Eddie Murphy Prods.*,

611 F.3d 322 (7th Cir. 2010) .................................................................................................. 8

*Omni Mfg. v. Smith (In re Smith),*

21 F.3d 660 (5th Cir. 1994) .............................................................................................. 8, 17

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,

507 U.S. 380 (1993)...................................................................... 6, 7, 9, 11, 12, 14, 15, 16, 17

*Razvi v. Dallas Fort Worth Int'l Airport*,

No. 21-10016, 2022 WL 4298141 (5th Cir. Sep. 16, 2022) ... 6, 7, 11, 12, 13, 14, 16, 17, 18, 19

*Reyna v. Epiroc Drilling Solutions, LLC*,

Civil Action No. 3:23-CV-1005-X,

2025 WL 317568 (N.D. Tex. Jan. 28, 2025) ....................................... 6, 7, 8, 11, 12, 13, 16, 17

*United States v. Clark*,

51 F.3d 42 (5th Cir. 1995) ........................................................................................... 6, 11, 16

*Vertigo Artography, Ltd. v. Champagne Cowgirl, LLC*,

No. 3:24-cv-120-BN, 2024 WL 4668550 (N.D. Tex. Nov. 4, 2024) ........... 8, 10, 11, 14, 15, 17

*West Wilmington Oil Feild v. Nabors Corporate Servs. (In re CJ Holding Co.)*,

27 F.4th 1105 (5th Cir. 2022) ........................................................ 6, 7, 8, 10, 12, 13, 14, 16, 17

*White v. Ark. Royal Ins. Co.*,

No. 24-20401, 2025 WL 2588992 (5th Cir. Sep. 8, 2025) ................................................. 8, 16

*Wilkinson v. Washington Med. Comm'n'n*,

35 Wash. App. 2d 350 (2025)......................................................................................... 5

*Williams v. Santander Consumer USA Holdings Inc.*,

Civil Action No. 3:21-CV-3176-D-BH,

2022 WL 3084478, at *3 (N.D. Tex. Aug. 2, 2022)................................................ 7, 13, 18, 19

*Zarnow v. City of Wichita Falls Tex.*,

614 F.3d 161 (5th Cir. 2010) ......................................................................................... 6

**Rules**

Fed. R. Civ. P. Rule 12(b)(1)............................................. i, 1, 3, 4, 10, 12, 13, 14, 15, 17, 19, 20

Fed. R. Civ. P. Rule 12(b)(2)................................................................... 1, 3, 4, 10, 15, 17

Fed. R. Civ. P. Rule 12(b)(3)................................................................................. 1, 4, 11

Fed. R. Civ. P. Rule 12(b)(6)......................................................................... 1, 3, 4, 10, 11

Fed. R. Civ. P. Rule 15 .................................................................................................. 9

Fed. R. Civ. P. Rule 16(c)(2)(L) ...................................................................................... 9

Fed. R. Civ. P. Rule 54(b)...................................................................................... 5, 18, 20

Fed. R. Civ. P. Rule 59(e)........................................................................................... 5, 18

Fed. R. Civ. P. Rule 6(b)(1)(B)........................................................................ i, 6, 7, 16, 20

Fed. R. Civ. P. Rule 60(b) .......... 6, 18

N.D. Tex. Local Rule 7.1(e) .......... 9

N.D. Tex. Local Rule 7.2(c) .......... 3

## INTRODUCTION

This action involves eighteen defendants in eight categories, including seven state medical boards, their members, state officials, and a nonprofit organization representing state and territorial medical boards. On July 24, 2026, Defendants filed eight motions to dismiss under Fed. R. Civ. P. Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), raising sovereign immunity, standing, abstention, personal jurisdiction, venue, immunity, limitations, and *Noerr-Pennington* defenses.

The briefing schedule set by the Honorable Court created an unusual and material inequity. N.D. Tex. Local Civil Rule 7.1(e) ordinarily allows 21 days to respond to an opposed motion, but Plaintiffs received 14 days to respond to eight simultaneous motions and four separate procedural grounds for dismissal filed by eighteen defendants. The parties had proposed September 21, 2026, as Plaintiffs' response deadline, but the Court set August 7, 2026.

Plaintiffs' lead counsel, who is in solo practice, worked diligently, obtained two short extensions, filed the Rule 12(b)(2) response on August 12, and filed the Rule 12(b)(1) response on August 16—two days after the twice-extended deadline. Plaintiffs' final request sought only five additional days, through August 19, 2026. Plaintiffs also acted contemporaneously to address the demands of briefing the instant matter. They retained additional counsel, Karen Osborne, Esq., but that attorney could provide only limited immediate assistance within the confines of the abbreviated briefing schedule.

On August 17, 2026 Plaintiffs sought Defendants' consent to the final extension. The California Defendants, stating that they spoke for at least some other Defendants, assented in exchange for seven additional days to reply and five additional pages for their reply briefs. Plaintiffs accepted both terms.

Reconsideration is warranted because the denial did not account for the complete equitable and procedural context: the abbreviated schedule, exceptional volume and complexity of the motions, minimal delay, absence of case-specific prejudice, Plaintiffs' diligence, contemporaneous efforts to obtain assistance, and the August 17, 2026 reciprocal accommodation requests. Excusable neglect is an equitable determination that requires consideration of all relevant circumstances, not a categorical judgment based on any single factor. Those circumstances collectively establish excusable neglect and support the narrow relief requested.

**RELEVANT PROCEDURAL BACKGROUND**

On June 14, 2026, Plaintiffs moved to amend the Complaint, as well as to add Plaintiff Richard Wilkinson and the "Washington Defendants"—Claire Trescott and the Washington Medical Commission. *See* D.99. The Court granted that motion on June 15, 2026, and unstayed the scheduling-order deadlines. *See* D.100. The First Amended Complaint named eighteen defendants within eight categories. *See* D.101.

The parties thereafter negotiated a coordinated briefing schedule. *See* Exhibit A at 2-31. The Non-Washington Defendants initially requested a two-week extension through July 14, 2026 to file responsive pleadings. *Id.* at 12. Plaintiffs assented on the condition that they receive a roughly commensurate extension to respond to any motions for dismissal. *Id.* at 9-12. The Non-Washington Defendants agreed to a total time of 34 days for Plaintiffs to respond. *Id.* at 9. As the negotiations expanded to include the Washington Defendants, Plaintiffs advised that they would need approximately one month to respond to any motions for dismissal. *Id.* at 7.

Defendants ultimately moved the Court, with Plaintiffs' assent, for August 21, 2026 as the deadline for their responsive pleadings, September 21 as the deadline for Plaintiffs'

responses, and October 13 as the deadline for Defendants' replies. *See* D.106. The Court denied Defendants' motion and instead required Defendants to file by July 24, 2026, Plaintiffs to respond by August 7, and Defendants to reply by August 14, 2026. *See* D.108.

Defendants filed eight dismissal motions on July 24. See D.115, D.118, D.121, D.123, D.126, D.128, D.131, D.134 Those motions presented four separate Fed. R. Civ. P. Rule 12(b) grounds based on numerous overlapping and defendant-specific defenses. All state agency and official Defendant groups raised sovereign immunity and personal-jurisdiction defenses; several state Defendant groups also raised Article III standing, *Younger* abstention, *Burford* abstention, and improper-venue defenses under Rule 12(b)(1-3). The Rule 12(b)(6) motions added qualified immunity, absolute immunity, statute of limitations, and *Noerr-Pennington* defenses.

The breadth of the motions required Plaintiffs to organize their responses both by procedural dismissal ground and by the groups of Defendants asserting each defense. Plaintiffs could not brief one generalized opposition applicable to all eight motions while remaining within the page limits of Local Rule 7.2(c). The responses instead required separate treatment of distinct jurisdictional, immunity, abstention, venue, limitations, and organizational-defendant issues.

Plaintiffs sought and received two short extensions of four and three days because the volume and complexity of the briefing made completion impossible despite diligent work. *See* D.137-39, D.142. Plaintiffs filed the Rule 12(b)(2) response brief on August 12, 2026, *see* D.140, and filed the Rule 12(b)(1) response brief on August 16. *See* D.143.

Plaintiffs' final motion requested five additional days until August 19, 2026, explaining that the Rule 12(b)(1) issues required more drafting than anticipated despite counsel's sustained work. *See* D.138. The Court denied the motion, citing its busy docket, the number of parties Plaintiffs sued, and the two prior extensions, and struck the August 16 response. *See* D.146.

**Matrix of Issues in Defendants' Motions to Dismiss**

| Defendant Group | Rule 12(b)(1) | Rule 12(b)(2) | Rule 12(b)(3) | Rule 12(b)(6) |
|---|---|---|---|---|
| **California** | Sovereign Immunity<br>Standing | Personal Jurisdiction | | Failure to State a Claim<br>Qualified Immunity<br>Statute of Limitations |
| **Massachusetts** | Sovereign Immunity<br>Standing<br>Burford Abstention | Personal Jurisdiction | | Failure to State a Claim<br>Absolute Immunity<br>Qualified Immunity<br>Statute of Limitations |
| **New York** | Sovereign Immunity<br>Standing | Personal Jurisdiction | | Failure to State a Claim<br>Absolute Immunity<br>Qualified Immunity |
| **Rhode Island** | Sovereign Immunity<br>Burford Abstention | Personal Jurisdiction | Improper Venue | Failure to State a Claim<br>Qualified Immunity<br>Statute of Limitations |
| **Texas** | Sovereign Immunity<br>Standing<br>Younger Abstention | Personal Jurisdiction | Improper Venue | Failure to State a Claim<br>Qualified Immunity |
| **Washington** | Sovereign Immunity<br>Younger Abstention | Personal Jurisdiction | | Failure to State a Claim<br>Absolute Immunity<br>Qualified Immunity |
| **Indiana** | Sovereign Immunity | Personal Jurisdiction | | Failure to State a Claim<br>Qualified Immunity |
| **FSMB** | | | | Failure to State a Claim<br>Noerr-Pennington |

On August 17, 2026, before the Court's order denying the final extension was served on the parties, the California Defendants assented to Plaintiffs' request for the final extension to August 19, 2026 on behalf of themselves and at least some other Defendants in exchange for seven additional reply days and five additional reply pages. *See* Exhibit B at 33-34. Plaintiffs agreed to those terms. *See id.* at 34. The parties thus identified a specific reciprocal accommodation that would have permitted complete briefing while protecting Defendants' ability to reply.

After filing the FAC, and in anticipation of the large amount of legal briefing by Defendants in this matter, Plaintiffs sought additional counsel. Plaintiffs now have retained Karen Osborne, Esq., of the Silent Majority Foundation, a 501(c)(3) organization centered on protecting America's Constitution and theological foundation. Attorney Osborne represented Plaintiff Richard Wilkinson in his related Washington state court case against Defendant Washington Medical Commission. *See Wilkinson v. Washington Med. Comm'n'n*, 35 Wash. App. 2d 350, 354 (2025). On September 10, 2026, Attorney Osborne moved for pro hac vice admission to represent the Plaintiffs in this matter before the Honorable Court. *See* D.157. However, because Attorney Osborne needed to learn the broader case facts and had prior commitments, she could provide only limited immediate assistance. Lead counsel therefore remained principally responsible for coordinating and drafting the responses.

## LEGAL STANDARD

### I. Rule 54(b) Governs Reconsideration

The challenged order did not resolve all claims or all parties' rights and liabilities and is therefore interlocutory. Fed. R. Civ. P. "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quotation marks omitted) (quoting Rule 54(b)). *See also McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018); *Brown v. City of Houston*, 2018 WL 1333883, at *1 (S.D. Tex. 2018).

The Fifth Circuit distinguishes Rule 54(b) reconsideration from the more stringent standards governing reconsideration of final judgments. A district court errs when it applies Rule 59(e)'s stricter standard to an interlocutory order, because Rule 54(b) affords broader flexibility

to revisit nonfinal rulings. See *Kroger Tex.*, 864 F.3d at 336-37; *McClendon*, 892 F.3d at 781. Under Rule 54(b), a trial court may "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). *See also Kroger Tex.*, 864 F.3d at 336; *Brown,* 2018 WL 1333883, at *1.

## II. Rule 6(b)(1)(B) Requires Good Cause and Excusable Neglect

Rule 6(b)(1)(B) permits the Court, for good cause, to extend an expired deadline when the failure to act resulted from excusable neglect. The Supreme Court has held that determining whether neglect is excusable is "at bottom an equitable" inquiry requiring consideration of all relevant circumstances surrounding the omission. *See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The central considerations include (1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential effect on the proceedings, (3) the reason for the delay and whether it was within the movant's reasonable control, and (4) whether the movant acted in good faith. *See West Wilmington Oil Feild v. Nabors Corporate Servs. (In re CJ Holding Co.)*, 27 F.4th 1105, 1112 (5th Cir. 2022); *United States v. Clark*, 51 F.3d 42, 44 (5th Cir. 1995) (applying the *Pioneer* factors to the rules of civil procedure and noting "the uniformity of the Circuits in extending Pioneer beyond the context of bankruptcy."). *See also Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 880 (5th Cir. 1998); *Razvi v. Dallas Fort Worth Int'l Airport*, No. 21-10016, 2022 WL 4298141, at *4 (5th Cir. Sep. 16, 2022) (applying *Pioneer* factors to excusable neglect under Fed. R. Civ. P. Rule 60(b)(1) on appeal from N.D. Tex.); *Reyna v. Epiroc Drilling Solutions, LLC*, Civil Action No. 3:23-CV-1005-X, 2025 WL 317568, at *3 (N.D. Tex. Jan. 28, 2025) (Starr, J.).

No "*Pioneer* factor is more important than the others." *West Wilmington*, 27 F.4th at 1112. The inquiry therefore does not end with counsel's responsibility for estimating workload. Clients ordinarily are accountable for the acts and omissions of their chosen counsel, so the focus remains on whether the neglect of both the litigant and counsel was excusable. *See Pioneer*, 507 U.S. at 393. *But see Alvarado v. BP Expl. & Prod., Inc. (In re Deepwater Horizon)*, 988 F.3d 192, 197 (5th Cir. 2021) ("Dismissals with prejudice for violations of docket management orders [usually] require . . . (1) delay caused by the plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct."); *Razvi*, 2022 WL 4298141, at *5; *Williams v. Santander Consumer USA Holdings Inc.*, Civil Action No. 3:21-CV-3176-D-BH, 2022 WL 3084478, at *3 (N.D. Tex. Aug. 2, 2022) (Ramirez, M.J.) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957).) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

Even where the act or omission is not fully prejudicial to a plaintiff's case, attorney responsibility does not displace the required equitable analysis or permit the other factors to be ignored. Courts applying Rule 6(b)(1)(B) must still evaluate the full circumstances, including prejudice, duration, effect on judicial proceedings, and good faith. *See West Wilmington*, 27 F.4th at 1114 (5th Cir. 2022); *Reyna*, 2025 WL 317568, at *1, *8 (finding excusable neglect based on lack of prejudice, shortness of six-day delay, and good faith, even though the plaintiff was represented by five attorneys).

The cases denying relief illustrate why the analysis is circumstance-specific. Relief has been denied where a party received approximately one hundred days of additional time yet offered only personal problems to explain the failure, *see Adams v. Travelers Indem. Co.*, 465

F.3d 156, 161 (5th Cir. 2006); where the requested extension would have prolonged litigation that had already remained unresolved for years and the movant failed to identify a valid reason for the delay, *see West Wilmington*, 27 F.4th at 1114-18; *Murphy v. Eddie Murphy Prods.*, 611 F.3d 322, 324 (7th Cir. 2010); or where experienced counsel misapplied a clear procedural rule, caused significant delay, and offered an explanation amounting to ordinary inattention. *See West Wilmington*, 27 F.4th at 1114-18; *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 462 (8th Cir. 2000). See also *Omni Mfg. v. Smith (In re Smith), 21 F.3d 660, 666 (5th Cir. 1994)* (finding four-year delay inexcusable); *West Wilmington*, 27 F.4th at 1114 (finding two-year-and-nine-month delay inexcusable); *Vertigo Artography, Ltd. v. Champagne Cowgirl, LLC*, No. 3:24-cv-120-BN, 2024 WL 4668550, at 3 (N.D. Tex. Nov. 4, 2024) (Horan, M.J.) (finding four month delay due to counsel inadvertence inexcusable); *Germania Farm Mut. Ins. Co. v. Deere & Co.*, No. 2:19-CV-227-Z-BR, 2021 WL 8155255, at *3 (N.D. Tex. May 11, 2021) (Reno, M.J.) (denying motion to extend lacking good cause and excusable neglect arguments without prejudice to refiling).

Conversely, a brief delay, lack of prejudice, minimal effect on judicial administration, and absence of bad faith can outweigh counsel responsibility. *See White v. Ark. Royal Ins. Co.*, No. 24-20401, 2025 WL 2588992, at *2 (5th Cir. Sep. 8, 2025) (finding that, where there is "minimal delay and prejudice involved, and the excuse provided" is reasonable, mistake may be an excusable reason for a 22-day delay—although "a missed deadline caused by mistake is a weaker excuse than one beyond the party's (or counsel's) control."); *Reyna*, 2025 WL 317568, at *8 ((denying motion to strike late filing) ("The Court imposed a deadline but Reyna blew it by six days. . . . The Court does not welcome blown deadlines and a tsk-tsk or two is in order, but, in the end, this neglect is excusable—especially in light of the Fifth Circuit's preference to

adjudicate cases on the merits, rather than on procedural mishaps."); *Hill v. First Tenn. Bank, N.A.*, Civil Action No. 3:17-CV-1298-L, 2018 WL 2427146, at 3–4 (N.D. Tex. May 30, 2018) (finding excusable neglect despite counsel responsibility for 22-day delay).

### III. Fed. R. Civ. P. Rule 16(c)(2)(L) Supports Tailored Management of Actions Involving Complex Issues and Multiple Parties

Fed. R. Civ. P. Rule 16(c)(2)(L) permits the Court to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." *Id.* The Supreme Court recognizes that district courts possess authority to manage their dockets. *See Pioneer*, 507 U.S. at 396-97). However, docket-management discretion remains tied to sound judicial administration and a reasoned assessment of the relevant equities. *See Alvarado*, 988 F.3d at 197; *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980).

## ARGUMENT

### I. B. The Abbreviated Schedule and Exceptional Scope of the Motions Materially Explain the Delay.

The reason for the delay must be evaluated in the context of all the circumstances. *Cf. Pioneer*, 507 U.S. at 393. Plaintiffs were required to respond within 14 days to eight simultaneous motions addressing four distinct procedural grounds and numerous defendant-specific defenses. Defendants received 10 days to three weeks more than the 14 days allowed under Fed. R. Civ. P. Rule 15 to draft these eight motions. Local Rule 7.1(e) ordinarily allows 21 days for a response to an opposed motion, yet Plaintiffs received seven fewer days to address all eight motions.

Defendants' arguments also required different forms of analysis. Sovereign immunity, standing, *Younger* abstention, and *Burford* abstention were raised by different combinations of

state Defendants. Personal-jurisdiction issues applied across the state agency and official Defendants, while venue defenses were asserted by only certain groups. The Rule 12(b)(6) motions presented still other issues, including qualified immunity, absolute immunity, statutes of limitations, and *Noerr-Pennington*.

This distribution prevented counsel from efficiently answering the motions through a single consolidated analysis. Counsel had to identify which defenses applied to which parties, separate overlapping arguments from defendant-specific ones, and ensure that each response addressed the particular grounds asserted by each moving group. That organization was necessary to produce useful briefing rather than repetitive or overgeneralized opposition.

Plaintiffs' counsel also made contemporaneous resource-allocation decisions designed to complete the briefing as efficiently as possible. Counsel prioritized and grouped issues by Rule 12(b) ground, completed the Rule 12(b)(2) response first, and continued drafting the more extensive Rule 12(b)(1) response. Plaintiffs retained additional counsel, but her ability to provide immediate assistance was constrained by the need to learn the broader action and by prior commitments.

Plaintiffs acknowledge that litigation workload and staffing remain counsel's responsibility. Attorney workload or loss of staff does not automatically establish excusable neglect, and courts properly examine whether the circumstances were within counsel's reasonable control. *See Vertigo*, 2024 WL 4668550, at *2-3. Likewise, ordinary inattention or misunderstanding of an unambiguous procedural rule generally will not suffice. *Cf. West Wilmington*, 27 F.4th at 1114-18; *Lowry*, 211 F.3d at 462. But neither circumstance is present here. Counsel knew the deadline, twice sought short extensions before expiration, continuously worked on the responses, attempted to add resources, and completed the Rule 12(b)(1) response

only two days late, with the Rule 12(b)(3) and 12(b)(6) responses to follow in five days. *Cf. Pioneer*, 507 U.S. at 397; *Razvi*, 2022 WL 4298141, at *5; *Reyna*, 2025 WL 317568, at *3; *Hill*, 2018 WL 2427146, at 2. Moreover, at least in scheduling negotiations with the Defendants' counsel, there was no failure by Plaintiff's counsel to anticipate workload in the instant matter. *Cf. Vertigo*, 2024 WL 4668550, at *2. Counsel both considered and accounted for the extended briefing time required to respond to dismissal motions by multiple Defendants: counsel consistently represented to the Defendants—and through their motions to extend, to the Court—that he requires a month to complete the responsive briefing, rather than the 21 days allowed by local rules.

The relevant question is therefore not whether counsel bears responsibility for estimating the required work when requesting the first two extensions; counsel does. The question is whether, considering all circumstances, the short delay warrants exclusion of the completed and remaining responses. The exceptional concentration of threshold motions, shortened response period, continuous work, efforts to obtain assistance, limited duration of the delay, and lack of demonstrated prejudice distinguish this case from ordinary attorney inattention. Under the governing equitable framework, those circumstances support relief. *Cf. Pioneer*, 507 U.S. at 397; *Clark*, 51 F.3d at 44; *Reyna*, 2025 WL 317568, at *3.

## II. Defendants Would Not Suffer Cognizable Prejudice.

Defendants previously agreed that Plaintiffs could respond by September 21, 2026. That agreement substantially undermines any contention that an extension only through August 19 would impair their ability to litigate the motions. Plaintiffs ultimately requested far less time than Defendants had been willing to allow during the parties' scheduling negotiations.

The August 17 conference provides even more direct evidence concerning prejudice. The California Defendants, speaking for themselves and at least some other Defendants, assented to Plaintiffs' final extension in exchange for seven additional days to reply and five additional pages for their reply briefs. Plaintiffs accepted those conditions. That exchange is significant because Defendants did not identify an irremediable litigation harm arising from the requested extension. Instead, they identified the precise accommodations they considered sufficient to protect their interests. Plaintiffs agreed to provide both additional time and additional briefing space.

Prejudice under the excusable-neglect analysis concerns the practical harm an extension would impose on the opposing party, while the length of delay separately considers the effect on judicial proceedings. *See Pioneer*, 507 U.S. at 395; *West Wilmington*, 27 F.4th at 1116. Plaintiffs' Rule 12(b)(1) response was only two days late, and the requested extension was limited to five days. This Court recently has found that a delay of only six days creates little danger of prejudice, especially if the opposing party has an opportunity to receive an extension as well. *See Reyna*, 2025 WL 317568, at *3, The Fifth Circuit has found that a delay of only 21 days has a minimal impact on judicial proceedings. *See Razvi*, 2022 WL 4298141, at *3. Nothing indicates that the two-day delay affected evidence, impaired a defense, altered the substance of any pending motion, or disrupted a trial setting. Nor would reinstatement deprive Defendants of an opportunity to address Plaintiffs' arguments. The Court can calculate the reply period from reinstatement and grant the agreed additional time and pages.

The circumstances also differ sharply from cases finding prejudice where a requested extension would further prolong litigation that had remained unresolved for several years. *Cf. West Wilmington*, 27 F.4th at 1116. Here, reinstatement would not initiate another lengthy stage

of proceedings or require substantial additional development. It would place an already completed response before the Court and allow Defendants to reply under terms they requested.

The relative consequences further favor relief. For Defendants, reinstatement would mean replying to Plaintiffs' arguments with additional time and space to do so. For Plaintiffs, denial means exclusion of a completed opposition to motions raising threshold jurisdictional defenses, as well as a nearly-completed opposition to motions for dismissal based on failure to state a claim. This leaves most of the Defendants' arguments for dismissal unanswered—and may prejudice Plaintiffs on appeal if the Fifth Circuit finds any unanswered arguments to have been waived. Defendants have moved to dismiss with prejudice and, even if the court dismisses Plaintiffs' claims without prejudice, many such claims now are past their statutes of limitations. *Cf. Alvarado*, 988 F.3d a 197; *Razvi*, 2022 WL 4298141 at *4; *Williams*, 2022 WL 3084478, at *3. In contrast, the requested accommodations eliminate any practical disadvantage to Defendants while preserving complete presentation of the issues. *Cf. Reyna*, 2025 WL 300431, at *3.

**III. The Delay Was Minimal and Had Little Practical Effect on the Proceedings.**

Plaintiffs' final motion requested only five additional days, through August 19, 2026. More importantly, the Rule 12(b)(1) response was completed and filed on August 16—only two days after the twice-extended deadline. The length-of-delay factor considers both the delay's duration and its potential effect on judicial proceedings. *Cf. West Wilmington*, 27 F.4th at 1114. Both considerations favor relief.

A two-day delay is minor in relation to eight dispositive motions presenting numerous threshold issues, particularly where the response is complete and reinstatement would require no further drafting period. *Cf. Reyna*, 2025 WL 317568, at *3. This case bears no resemblance to

cases in which an extension would perpetuate years of delay. Here, the requested extension was five days, the response was filed after only two days, and the delay arose during concentrated briefing on eight simultaneously filed motions. *Cf. Vertigo*, 2024 WL 4668550, at *3 (denying extension where request grounded solely in counsel inadvertence, "the length of delay is multiple months, not a few days or even a week or two"). *But see Boberg v. Pethick*, Civil Action No. 3:20-CV-3649-L, 2023 WL 4306734, at *2 (N.D. Tex. June 30, 2023) ("Although several months passed after expiration of its deadline to file an answer, which was a matter within its control, Powers moved for leave soon after learning of the oversight.")

Nor is this a case in which the movant had approximately one hundred additional days to respond but failed to use that ample period. *Cf. Adams*, 465 F.3d at 161. Plaintiffs received an abbreviated initial response period, sought only incremental extensions, and completed the Rule 12(b)(1) response promptly. The duration and procedural context of this delay are therefore materially different from circumstances in which appellate courts have upheld denial of relief.

The Court's discretion over its docket is properly exercised in the interest of sound judicial administration. *See Curtiss-Wright*, 446 U.S. at 10; *Alvarado*, 988 F.3d at 197. Here, sound administration favors accepting a completed response after a minimal delay, fixing a corresponding reply schedule, and resolving the motions on complete briefing. The delay's limited duration and negligible effect on the proceedings weigh strongly in favor of excusable neglect. *Cf. Razvi*, 2022 WL 4298141, at *3.

**IV. Plaintiffs Acted Diligently and in Good Faith.**

Good faith is an express component of the excusable-neglect inquiry. *See Pioneer*, 507 U.S. at 395; *West Wilmington*, 27 F.4th at 1118 ("[L]ack of diligence can at least cast doubt on a claim of good faith.") Plaintiffs' conduct throughout the response period demonstrates diligence

rather than strategic delay or disregard of the Court's orders. *Cf. Reyna*, 2025 WL 300431, at *3; *Boberg*, 2023 WL 4306734, at *2. Plaintiffs sought their first extension before the original response deadline and requested only four additional days. When further time became necessary, Plaintiffs sought a second limited extension of three days. Plaintiffs then filed the Rule 12(b)(2) response on August 12, 2026 and completed the Rule 12(b)(1) response on August 16. Their conduct reflects continuous progress toward completing the briefing, not abandonment of the deadlines. *Cf. Vertigo*, 2024 WL 4668550, at *1. Plaintiffs also attempted to increase available resources before the responses were due by retaining additional counsel. Although Attorney Osborne's immediate assistance was limited by the need to learn the broader action and satisfy prior commitments, the retention confirms that Plaintiffs recognized the workload and took affirmative measures to address it.

The manner in which Plaintiffs requested relief further supports good faith. Each request sought a specific, short extension that was no more—and actually even less—than the time required. Plaintiffs did not seek an indefinite suspension of briefing or attempt to postpone resolution of the motions for tactical reasons. They continued working while their requests were pending and filed completed responses as they became available. Plaintiffs also sought Defendants' consent and accepted reciprocal terms protecting Defendants' interests. They agreed that Defendants could receive seven additional reply days and five additional reply pages. That willingness to preserve Defendants' full opportunity to respond confirms that Plaintiffs sought a workable briefing schedule rather than a unilateral procedural advantage.

Although clients remain accountable for counsel's conduct, the question is whether the conduct of both counsel and client was excusable under the complete circumstances. *See Pioneer*, 507 U.S. at 396. Plaintiffs' sustained work, incremental requests, prompt filing,

resource-allocation efforts, and reciprocal accommodation support a finding that they acted diligently and in good faith. *Cf. Razvi*, 2022 WL 4298141, at *4; *Reyna*, 2025 WL 317568, at *3; *Boberg*, 2023 WL 4306734, at *2.

**V. The Complete Equitable Circumstances Warrant Reconsideration.**

The denial order emphasized the Court's busy docket, the number of parties Plaintiffs sued, and the two extensions previously granted. These are important concerns, but they do not complete the Rule 6(b)(1)(B) inquiry. Excusable neglect requires an equitable assessment of all relevant circumstances, including prejudice, the length and practical effect of the delay, the reason for the delay, reasonable control, and good faith. *See Pioneer*, 507 U.S. at 395; (1993); *West Wilmington*, 27 F.4th at 1112; *Clark*, 51 F.3d at 44; *Midwest Employers,* 161 F.3d at 880.

Those circumstances favor relief. Plaintiffs received fourteen days—not the ordinary 21 days under local rules—to respond to eight simultaneous motions. The motions were not cumulative copies raising a single common defense. They invoked four subdivisions of Rule 12(b) and required Plaintiffs to analyze different combinations of sovereign immunity, standing, abstention, personal jurisdiction, venue, qualified immunity, absolute immunity, limitations, and Noerr-Pennington issues. The parties' prior scheduling negotiations confirm that Plaintiffs' request for additional time was reasonable. Defendants agreed to a schedule under which Plaintiffs would respond on September 21, 2026; and Plaintiffs consistently represented that they will need about a month to complete the response briefing once the motions to dismiss were filed. The Court's abbreviated schedule was not within Plaintiffs' or their counsel's control. *Cf. White*, 2025 WL 2588992, at *2 (mistake may an excusable reason for delay, but "a missed deadline caused by mistake is a weaker excuse than one beyond the party's (or counsel's) control.").

Plaintiffs' final motion requested only until August 19, 2026—more than one month earlier than the date Defendants previously had accepted, and extended the total response briefing time to only 26 days, as compared to 39 days of motion briefing time for the Non-Washington Defendants and 28 days for the Washington Defendants. These facts bear directly on the reason for the delay, and whether it was in Plaintiffs' counsel's reasonable control. *Cf. West Wilmington*, 27 F.4th at 1114; *Omni*, 21 F.3d at 666; *Reyna*, 2025 WL 317568, at *1, *3.

The timing of Plaintiffs' work also supports reconsideration. Unlike in cases where inexcusable neglect was found, Plaintiffs did not wait until after the deadline long had passed to start preparing their oppositions. *Cf. West Wilmington*, 27 F.4th at 1114; *Omni*, 21 F.3d at 666; *Vertigo*, 2024 WL 4668550, at *1. They sought the first extension before the original deadline, requested only incremental enlargements to minimize the total delay, filed the Rule 12(b)(2) response when completed, and filed the Rule 12(b)(1) response two days after the twice-extended deadline. Those facts bear directly on the good-faith and length-of-delay factors. *Cf. Pioneer*, 507 U.S. at 397; *Razvi*, 2022 WL 4298141, at *4; *Reyna*, 2025 WL 317568, at *3; *Hill*, 2018 WL 2427146, at 3.

This case is unlike decisions denying extensions after multiple extensions where the movant had ample time to comply but failed to present a sufficient explanation. *Cf. Adams*, 465 F.3d at 161. It also differs from cases involving prolonged litigation in which the requested extension would itself cause substantial additional delay. *Cf. West Wilmington*, 27 F.4th at 1116. Here, Plaintiffs faced an abbreviated and unequal period of time to respond to eight motions, continuously worked toward completion, filed the struck response only two days late, and requested only five additional days to finish the final response.

The Court may account for these circumstances under Rule 54(b)'s flexible standard without relinquishing control over the case. *Cf. Kroger Tex.*, 864 F.3d at 334; *McClendon*, 892 F.3d at 781 (2018); *Brown*, 2018 WL 1333883, at *1. The proposed relief is fixed, limited, and reciprocal. It would preserve orderly briefing while avoiding the disproportionate consequence of prejudicially excluding a completed response to dispositive motions because of a two-day delay. *Cf. Alvarado*, 988 F.3d a 197; *Razvi*, 2022 WL 4298141, at *4; *Williams*, 2022 WL 3084478, at *3.

## VI. F. The Requested Relief Is Proportionate and Consistent with Efficient Docket Management.

Plaintiffs do not dispute the Court's authority to manage its docket efficiently. They ask the Court to exercise that authority through a narrow procedure tailored to this complex, multiparty action. Docket-management discretion is substantial, but its exercise remains guided by sound judicial administration and a reasoned assessment of the relevant equities. *See Curtiss-Wright*, 446 U.S. at 10; *Alvarado*, 988 F.3d a 197.

The proposed relief is proportionate. Plaintiffs do not seek to reopen a final judgment, disturb a merits adjudication, or obtain an indefinite extension. They ask the Court to reconsider an interlocutory scheduling determination, reinstate an already completed response filed two days late, set a firm deadline for any remaining response, and provide Defendants with corresponding reply accommodations. Rule 54(b) gives the Court broader flexibility to revise an interlocutory ruling than Rules 59(e) and 60(b) provide for final judgments. *See Kroger Tex.*, 864 F.3d at 334; *McClendon*, 892 F.3d at 781; *Brown*, 2018 WL 1333883, at *1. Courts within the Fifth Circuit likewise recognize the inherent procedural authority to reconsider, rescind, or modify interlocutory orders for sufficient cause. *See Blythe v. Offshore Serv. Vessels, LLC*, 423

F. Supp. 3d 299, 303 (E.D. La. 2019), *Fairley v. Wal-Mart Stores, Inc.*, 2016 WL 9582711, at *4 (E.D. La. 2016).

That flexibility is especially appropriate here because the requested relief would not unsettle reliance interests or require duplication of completed proceedings. It would restore a brief already prepared, establish definite deadlines, and preserve Defendants' opportunity to reply. The Court would retain complete control over the timing and sequence of the remaining briefing.

In contrast, excluding Plaintiffs' completed response may complicate resolution of the dismissal motions by depriving the Court of adversarial briefing on significant threshold issues. Accepting the response and setting a prompt reply schedule would facilitate, rather than impede, efficient adjudication. The alternative consequence—potential dismissal with prejudice without adversarial briefing—is disproportionate to the omission, especially given that the delay was caused by the limited resources of their solo practice attorney, and not by the Plaintiffs themselves. *Cf. Alvarado*, 988 F.3d a 197; *Razvi*, 2022 WL 4298141, at *4; *Williams*, 2022 WL 3084478, at *3. Striking a substantive response because it was filed two days late does not materially accelerate the case, particularly where Defendants previously accepted a substantially later response date and agreed to specific accommodations. Reinstatement would achieve the more efficient result by allowing the Court to resolve the motions on developed briefing without further collateral disputes over the response schedule.

Reinstating the Rule 12(b)(1) response, setting a firm deadline for any remaining response, and enlarging Defendants' reply time and page limits would provide equitable relief narrowly tailored to the omission while preserving disciplined control of the docket. The

complete circumstances therefore establish good cause and excusable neglect under Rule 6(b)(1)(B) and warrant reconsideration under Rule 54(b)

**CONCLUSION AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request the Court:

1. Reconsider its August 17, 2026 order denying Plaintiffs' Final Motion to Extend the Time to Respond to Defendants' Motions to Dismiss;
2. Grant Plaintiffs' requested extension under Rule 6(b)(1)(B);
3. Direct the Clerk to reinstate Plaintiffs' Rule 12(b)(1) response filed August 16, 2026;
4. Permit Plaintiffs to file any remaining response to Defendants' motions to dismiss by September 21, 2026;
5. Grant Defendants seven additional days to reply to Plaintiffs' responses and permit each reply brief to exceed the otherwise applicable page limit by five pages; and
6. Grant Plaintiffs such other and further relief to which they may be entitled.

Respectfully submitted,

Dated: September 13, 2026

Respectfully submitted,

Ilya I. Feoktistov (*pro hac vice*)
Law Office of Ilya Feoktistov
60 Burnham Dr.
Falmouth, MA 02540
Telephone: 617-462-7938
Email: if@ilyafeoktistov.com

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered as CM/ECF users, on this September 13, 2026.

Ilya Feoktistov

**CERTIFICATE OF CONFERENCE**

On September 10, 2026 I sought assent to the instant motion from the Defendants. All Defendants represented that they oppose the instant motion.