UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**MARK KELLY SUTTON, ET AL.,**

Plaintiffs,

v. **No. 4:25-cv-01230-P**

**FEDERATION OF STATE MEDICAL BOARDS, INC., ET AL.,**

Defendants.

**OPINION AND ORDER**

Before the Court are eight motions to dismiss. *See* ECF Nos. 115, 118, 121, 123, 126, 128, 131, 134. Plaintiffs sued several groups of defendants consisting of state medical boards and their primary officers.[1] Plaintiffs also sued the non-profit organization Federation of State Medical Boards ("FSMB"), and its former board members Katie Templeton and Kenneth Simons ("FSMB Defendants"). On various grounds, each group of defendants has moved to dismiss Plaintiffs' First Amended Complaint ("FAC") (ECF No. 101). For the reasons stated herein, the Court will **GRANT** the motions to dismiss.

[1] Specifically, Plaintiffs sued: Rhode Island Board of Medical Licensure and Discipline and its former director Nicole Alexander-Scott ("Rhode Island Defendants"); Texas Medical Board and its president Sherif Zaafran ("Texas Defendants"); Massachusetts Board of Registration in Medicine and its former chair Julian Robinson ("Massachusetts Defendants"); New York State Board for Professional Medical Conduct and its former chairman Andrew Merritt ("New York Defendants"); Medical Licensing Board of Indiana and its chair John Strobel ("Indiana Defendants"); Washington Medical Commission and its former chair Claire Trescott ("Washington Defendants"); the Medical Board of California, its former executive director Kimberly Kirchmeyer, and former assistant director of the California Department of Public Health Charity Dean ("California Defendants") (collectively, the "Medical Board Defendants").

## BACKGROUND

This lawsuit centers around policies promulgated by the FSMB during the COVID-19 pandemic and implemented nationwide by state medical boards. Plaintiffs are a group of physicians[2] and allege the FSMB created a "Censorship Policy" that was the driving force behind their respective state medical boards' decisions to revoke, suspend, or restrict their medical licenses.

The FSMB is a non-profit organization whose membership consists of state medical boards. FAC ¶¶ 68, 71. It purports to exist to promote uniformity in the administration of medical practice acts across the United States by advocating the adoption of certain standards. FAC ¶ 70. Plaintiffs blame multiple FSMB actions for their resulting discipline.

First, in July 2021, the FSMB issued a public statement warning that professionals who spread COVID-19 misinformation and disinformation risk disciplinary action. FSMB contended misleading statements erode public trust in the medical profession and put patients at risk. FAC ¶ 346 (referred to by Plaintiffs as the "FSMB Censorship Statement"). Second, in April 2022, the FSMB recommended state medical boards adopt "a specific policy on misinformation . . . in light of the increased prevalence of, and harm caused by, physician-disseminated misinformation in this ongoing pandemic." FAC ¶ 6. The specific policy recommended medical boards consider disciplinary action when adjudicating cases based on misinformation and disinformation, enumerating several grounds that may warrant discipline. FAC ¶¶ 6–

[2]Plaintiffs are Mary Kelly Sutton, John Humiston, Mary Talley Bowden, Mark Brody, and Richard Wilkson (together, the "Physician Plaintiffs"). Among the Physician Plaintiffs exists Physicians and Patients Reclaiming Medicine ("PPRM"). PPRM purports to be a non-profit organization whose mission is to "restore integrity to medical practice and establish patient physician autonomy, consistent with patients' faiths, medical histories and personal philosophies, as a fundamental right." FAC ¶ 51. Its members include unnamed physicians wishing to convey information to their patients against the prevailing medical consensus. FAC ¶ 55. Its members also include patients who wish to receive non-traditional health care services, including patients of the Physician Plaintiffs who can longer receive treatment from those providers. FAC ¶¶ 57–67.

11 (referred to by Plaintiffs as the "FSMB Censorship Policy"). The FSMB reasoned that a policy "prohibit[ing] physicians from disseminating misinformation or engaging in disinformation" would be a "reasonable restriction on professional conduct." FAC ¶ 12.

Plaintiffs allege the state medical boards named in this suit each adopted statements or policies akin to the FSMB's statement and policy on COVID-19 misinformation. *See* FAC ¶ 537. And Plaintiffs allege each Physician Plaintiff had their speech suppressed by the respective state medical boards as a result. FAC ¶¶ 531, 537.

Each Physician Plaintiff was disciplined by their state medical board. FAC ¶ 15. Drs. Sutton and Humiston were disciplined by the medical boards of California, Massachusetts, New York, and Indiana for writing medical exemptions from vaccinations to children whose families had histories of adverse reactions to vaccines. That justification for an exemption was not recommended by scientific consensus. FAC ¶¶ 17, 369–70, 389–91, 396, 399, 404–05. Dr. Brody had his medical licenses suspended by the medical boards of Rhode Island and Massachusetts for sending an email to patients. Dr. Brody's email stated, in part, that he would not administer the "experimental" COVID-19 vaccine to anyone, comparing that vaccine to Nazi experiments conducted during World War II. FAC ¶¶ 316–318, 344, 367, 397. The Texas Medical Board restricted Dr. Bowden's medical license for dispatching her nurse to a hospital where she held no privileges to administer ivermectin to a patient there. FAC ¶¶ 479–84, 493–94. The medical board of Washington placed Dr. Wilkinson's license on probation after finding he made misstatements about the COVID-19 pandemic and vaccines. The board also found Dr. Wilkinson violated the standard of care by treating COVID-19 patients with ivermectin against the guidance of the FDA. FAC ¶¶ 511–16.

Plaintiffs allege these disciplinary actions were the result of the Medical Board Defendants' implementation of FSMB policies. FAC ¶¶ 537–38. Plaintiffs further allege the discipline constituted unconstitutional viewpoint discrimination. FAC ¶¶ 531. Plaintiffs assert two causes of action under 28 U.S.C. § 1983. Count I asserts the Medical Board Defendants engaged in viewpoint discrimination in violation of the First and Fourteenth Amendments. Count II asserts the

Medical Board Defendants conspired with the FSMB Defendants to discriminate based on viewpoint in violation of the First and Fourteenth Amendment.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(2)

A federal court cannot hear a case if it lacks personal jurisdiction over the defendant. FED. R. CIV. P. 12(B)(2). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). And when the court considers a motion to dismiss for lack of jurisdiction without holding an evidentiary hearing, a plaintiff need only make a *prima facie* case that personal jurisdiction exists. *Abramov v. Otis Elevator Co.*, No. 3:11-cv-440-D, 2011 WL 5081560, at *2 (N.D. Tex. Oct. 25, 2011) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). Although the court must accept all uncontroverted allegations in the complaint as true, this standard "does not require the court to credit conclusory allegations, even if uncontroverted." *Id.* (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam)).

### B. Federal Rule of Civil Procedure 12(b)(1)

The Court must dismiss the case if it does not have the right to exercise its limited jurisdiction over the subject matter presented in the complaint. FED. R. CIV. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted). If there is no subject matter jurisdiction, the Court lacks the power to adjudicate the case. *Stockman*, 138 F.3d at 151.

### C. Federal Rule of Civil Procedure 12(b)(6)

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

## ANALYSIS

Due to the many arguments contained in Defendants' eight motions, the Court finds the following grounds dispositive and will address them in turn: (1) personal jurisdiction; (2) subject-matter jurisdiction; and (3) failure to state a claim.[3]

### A. The Court lacks personal jurisdiction over the Massachusetts Defendants, Rhode Island Defendants, New York Defendants, Indiana Defendants, Washington Defendants, and California Defendants (the "Nonresident Defendants").

The Nonresident Defendants each argue that the Court lacks personal jurisdiction over them. The Court agrees.

Federal courts may exercise personal jurisdiction if: "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). And because Texas's long-arm statute "extends as far as constitutional due process allows,"

[3]The Court notes Plaintiffs only properly responded to Defendants' arguments raising lack of personal jurisdiction. *See* ECF No. 140–141. Despite Plaintiffs' failure to respond to the other grounds for dismissal, the Court will evaluate those grounds thoroughly.

this Court need only consider the due process inquiry. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). That inquiry requires a plaintiff to show: (1) minimum contacts between the defendant and the forum state; and (2) that the assertion of jurisdiction is fair and reasonable. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018).

The minimum-contacts prong is further divided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). General jurisdiction exists when a defendant's contacts are so continuous and systematic to render them essentially at home in the forum state. *Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 416 (1984). On the other hand, specific jurisdiction requires a showing by the plaintiff that: (1) the defendant purposefully directed his activities at residents in the forum; (2) the litigation results from alleged injuries that arise from or relate to the defendant's activities in the forum; and (3) the exercise of jurisdiction will comport with “fair play and substantial justice.” *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472—73, 476 (1985) (citing *Int'l Shoe*, 326 U.S. at 316).

Plaintiffs do not dispute this Court lacks general personal jurisdiction over the Nonresident Defendants. *See* ECF No. 141 at 3. Thus, the only inquiry is whether this Court has specific personal jurisdiction over those Defendants.

Plaintiffs’ broad jurisdictional hook is that “Defendant FSMB’s headquarters in Euless, Texas were the physical locus of all Defendants’ agreement under the color of law to violate 42 U.S.C. § 1983, as pleaded in Count II.” FAC ¶ 239. Nonetheless, “[p]ersonal jurisdiction must exist for each claim asserted against [each] defendant.” *Rolls-Royce Corp. v. Heros, Inc.,* 576 F. Supp. 2d 765, 772 (N.D. Tex. 2008) (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.,* 368 F.3d 1174, 1180 (9th Cir. 2004)). Minimum contacts must exist individually, “and not as part of the conspiracy[.]” *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004). The Court thus evaluates each Nonresident Defendant’s minimum contacts with the state of Texas.

1. The Massachusetts Defendants

The FAC does not allege the Massachusetts Defendants specifically directed any action at Texas. In fact, the only allegations specific to the Massachusetts Defendants are that the Massachusetts Defendants revoked two physicians' licenses to practice medicine in Massachusetts. FAC ¶¶ 396–98. The Massachusetts Defendants' only purported connection to the forum state is the alleged conspiracy among the state medical boards and the FSMB. FAC ¶ 239. The Massachusetts Defendants plainly lack minimum contacts with the state of Texas.

2. The Rhode Island Defendants

Again, the FAC alleges no specific act taken by the Rhode Island Defendants directed at Texas. The allegations against the Rhode Island Defendants involve disciplinary actions taken against a physician licensed in Rhode Island for violating Rhode Island laws. FAC ¶ 326–44; 367; 400–03. The Rhode Island Defendants' only purported connection to Texas is an alleged agreement between the FSMB and the Rhode Island Defendants to discipline Dr. Brody. FAC ¶ 324. Beyond the alleged professional association with Defendant FSMB, Plaintiffs fail to provide any specific facts showing the Rhode Island Defendants purposefully directed or aimed their allegedly unconstitutional conduct at Texas. The Rhode Island Defendants lack minimum contacts with the forum state.

3. New York Defendants

The New York Defendants' only purported connection to Texas is their membership in and an alleged conspiracy with the FSMB. FAC ¶ 239. The FAC alleges the New York Defendants revoked Dr. Sutton's license to practice medicine in New York. FAC ¶ 399. Plaintiffs fail to allege any activities or contacts that connect the New York Defendants to Texas beyond the alleged professional association with Defendant FSMB. While Defendant Merritt served as a Board Member Fellow at FSMB, Plaintiffs do not allege that he ever stepped foot in Texas. FAC ¶ 189. The New York Defendants lack minimum contacts with the state of Texas.

4. Indiana Defendants

Plaintiffs allege no specific act of any Indiana Defendant directed at Texas. Instead, Plaintiffs allege the Indiana Defendants indefinitely suspended Dr. Humiston's license to practice in Indiana. FAC ¶ 404. The discipline imposed by the Indiana Defendants on Plaintiff John Humiston occurred solely in Indiana in connection with his Indiana medical license, for conduct occurring in California. FAC ¶¶ 206, 389, 391, 395, 404–05. The Indiana Defendants' membership in and alleged conspiracy with FSMB is not enough to establish minimum contacts with the forum state.

5. Washington Defendants

The FAC alleges only the Washington Defendants investigated and took disciplinary action against Dr. Wilkinson in Washington in connection with his Washington medical license. FAC ¶¶ 501–17. Apart from the Washington Defendants' membership in FSMB, Plaintiffs allege no facts establishing any connection between the Washington Defendants and Texas. Plaintiffs have not alleged facts sufficient to establish the Washington Defendants have minimum contacts with Texas.

6. California Defendants

The FAC complains of actions the California Defendants took within California. *See, e.g.*, FAC ¶¶ 263–93 (detailing Defendant Dean and Kirchmeyer's roles in the medical exemption campaign in California); FAC ¶¶ 369–70; 389 (Medical Board of California suspended Dr. Sutton's and Dr. Humiston's licenses to practice medicine in California). The only allegations supporting any contact by a California Defendant directed at the state of Texas are that Defendant Kirchmeyer "joined and enlisted the help of the FSMB's national leadership in Euless, Texas" and "agreed at the FSMB national headquarters in Euless, Texas that the FSMB" would pressure medical boards to discipline physicians for writing medical exemptions from vaccinations. FAC ¶¶ 308, 310. Nonetheless, Plaintiffs do not include factual allegations supporting these statements to identify who Defendant Kirchmeyer communicated with, when these conversations happened, or whether Defendant Kirchmeyer ever traveled to Texas. These conclusory allegations cannot

carry Plaintiffs' burden to demonstrate that the Court has personal jurisdiction over the California Defendants. *See Panda Brandywine*, 253 F.3d at 869.

It is axiomatic that personal jurisdiction requires more than "random, fortuitous, or attenuated contacts [the defendant] makes by interacting with other persons affiliated with the State." *Tutus, L.L.C v. JLG Indus., Inc.*, No. 21-20383, 2022 WL 1517044, at *1 (5th Cir. May 12, 2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). A "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286. And allegations of conspiracy alone will not support the Court's exercise of jurisdiction absent each Defendants' minimum contacts with Texas. *Star Tech., Inc. v. Tultex Corp.*, 844 F. Supp. 295, 299 (N.D. Tex. 1993). While Plaintiffs make much of a virtual "town hall event" anchored in Euless, Texas and attended by leaders of FSMB member medical boards, Plaintiffs do not allege any Defendant attended that meeting, whether in-person or virtually. FAC ¶¶ 372–79. Apart from being members in the FSMB, and allegedly entering into a conspiracy with FSMB, Plaintiffs have not pled facts showing the Nonresident Defendants "purposefully availed" themselves of the privilege of conducting activities in Texas. *Burger King*, 471 U.S. at 475. Plaintiffs have failed to establish that *in personam* jurisdiction exists over the Nonresident Defendants.

Exercising personal jurisdiction over the Nonresident Defendants would be improper. Accordingly, this case is **DISMISSED without prejudice** as to the Massachusetts Defendants, Rhode Island Defendants, New York Defendants, Indiana Defendants, Washington Defendants, and California Defendants.

### B. The official-capacity claims against the Texas Defendants are barred by sovereign immunity.

The Texas Defendants argue sovereign immunity bars all claims against the Texas Medical Board ("TMB") and Dr. Zaafran in his official capacity. The Court agrees.

The Eleventh Amendment bars suits in federal court against states—including state agencies—unless the state has waived its immunity, or Congress has abrogated that immunity. *Pennhurst State*

*Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 98–100 (1984). An action against "a state" may also include actions against its "instrumentalities." *Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 937 (5th Cir. 2001). Similarly, claims brought against employees of a state instrumentality in their official capacity may be barred by sovereign immunity. *Lewis v. Clarke*, 581 U.S. 155, 162 (2017).

An additional exception to state sovereign immunity was established in *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* doctrine protects state officials sued in their official capacity when the relief sought is retroactive rather than prospective. *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). To determine whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, courts need only conduct a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002) (citation omitted).

Here, Plaintiffs sued the Texas Medical Board and TMB's "individual members in their official capacities."[4] FAC ¶ 155. TMB is "clearly a Texas state agency." *Rivera v. Texas State Bd. of Med. Examiners*, 431 F. App'x 356, 357 (5th Cir. 2011); *see also Caruso v. Texas Medical Board*, No. 25-50014, 2025 WL 2543984, at *3 (5th Cir. Sept. 4, 2025) (sovereign immunity barred claims against TMB and damages claims against officers). And the claims against the individuals in their official capacities are treated as a suit against the state entity. *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

Because Congress has not abrogated sovereign immunity with respect to these claims, and Texas has not waived it, the only remaining question is whether the *Ex parte Young* doctrine applies here. That

[4]The FAC names Dr. Zaafran only in his personal capacity. FAC ¶ 161. However, Plaintiffs purport to sue TMB's "individual members in their official capacities." FAC ¶ 155. Dr. Zaafran is the only TMB member the complaint names. While Plaintiffs' intent is unclear, the Court construes the complaint as suing Dr. Zaafran in his official capacity.

determination requires the Court to consider whether the relief Plaintiffs seek is retrospective or prospective. If it is retrospective, Plaintiffs' claims are barred by the Eleventh Amendment. If it is prospective, Plaintiffs' claims may proceed. *See Edelman*, 415 U.S. at 664.

In addition to damages, Plaintiffs seek to have their medical licenses restored by removing the restrictions imposed as discipline. FAC pp. 90–91. With respect to Dr. Bowden, the only Plaintiff disciplined by TMB, the only discipline imposed was a public reprimand for unprofessional and disruptive conduct. FAC ¶¶ 493, 531(g). While Plaintiffs attempt to maneuver this reality by framing it as a continual restriction on Dr. Bowden's medical license, *see* FAC ¶¶ 531, 538, the only discipline the FAC pleads is a public reprimand that occurred on October 17, 2025. FAC ¶ 493. Apart from generalized allegations that Dr. Bowden continues to be injured, the FAC is devoid of any specific, ongoing harm that Dr. Bowden suffers. Rather, her discipline was completed on October 17, 2025, the date she was reprimanded.

Under a "straightforward inquiry," the FAC alleges no ongoing violation of federal law with respect to Dr. Bowden. *Verizon Maryland,* 535 U.S. at 636. Instead, it alleges a harm that already occurred. This is not a case where Dr. Bowden has pointed to an ongoing restriction of her license, such as the posting of her restricted license on TMB's website. *See e.g., Caruso*, 2025 WL 2543984 at *4 (plaintiff sought prospective relief where the status of her license continued to be restricted). Rather, Dr. Bowden seeks relief from a past wrong. The relief sought is retrospective, and the *Ex parte Young* doctrine is inapplicable here.

Accordingly, the claims against the Texas Medical Board and the official capacity claims against the individuals comprising that board, including Dr. Zaafran, are barred by the Eleventh Amendment. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** as to those defendants.

### C. Dr. Zaafran is entitled to qualified immunity from the individual capacity claims.

The defense of qualified immunity applies to suits against defendants in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). The Court must answer two prongs in the affirmative before an official can be liable: (1) whether the facts that a plaintiff has alleged constitute a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* at 232. When confronted with a qualified immunity defense at the pleading stage, the plaintiff carries the burden to identify facts which, if proven, defeat the claim of immunity. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted). Courts assess each defendant's actions individually when evaluating qualified immunity. *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007).

With respect to Dr. Zaafran, Plaintiffs allege: Dr. Zaafran is the president of TMB and advisor to the Food and Drug Administration (FAC ¶ 156); Dr. Zaafran has served as an FSMB Board Member Fellow and on the Board of Directors (FAC ¶¶ 158–59); Dr. Zaafran responded to concerns of a Texas State senator by stating that "TMB is not interested in stifling physician patient communication that meets the standard of care" (FAC ¶ 406–08); Dr. Zaafran and TMB initiated disciplinary proceedings against Dr. Bowden (FAC ¶ 456); Dr. Zaafran and TMB publicly reprimanded Dr. Bowden for unprofessional and disruptive conduct (FAC ¶ 493); and Dr. Zaafran spoke at Dr. Bowden's reprimand hearing (FAC ¶ 494).

Even crediting Plaintiffs' assertion that Dr. Zaafran initiated disciplinary proceedings against Dr. Bowden in conjunction with TMB, Dr. Zaafran's conduct does not rise to the level of a constitutional violation. The FAC alleges Dr. Bowden was disciplined after she dispatched a nurse to treat a patient at a hospital where she had no privileges. FAC ¶¶ 479–84. The only charge that proceeded against Dr. Bowden was for disruptive behavior. FAC ¶ 477. Dr. Zaafran and TMB

publicly reprimanded Dr. Bowden for allegedly unprofessional and disruptive conduct pursuant to the Texas Occupations Code § 164.001(3). FAC ¶ 493. Dr. Zaafran's statement at the reprimand hearing conveyed that Dr. Bowden was disciplined because she attempted treat a patient in a hospital where she held no privileges—not for any other reason. FAC ¶ 494.

The allegations contained in the FAC demonstrate that Dr. Bowden was disciplined for her conduct, not her viewpoint. By dispatching a nurse to a hospital where she held no privileges—regardless of her subjective understanding of whether she held privileges there—Dr. Bowden violated the Texas Medical Practice Act. FAC ¶ 483. The allegations are clear that it was the wrongful dispatch of the nurse that prompted a complaint against Dr. Bowden, not any of Dr. Bowden's court testimony. FAC ¶ 422. And Plaintiffs' assertion that, while at the hospital, "neither Dr. Bowden nor her nurse engaged in any non-expressive conduct" is puzzling. FAC ¶ 487. To the contrary, the FAC attempts to support this sentence by pointing to *only* non-expressive conduct: the nurse appeared at the hospital, showed a court order to hospital staff, sat in a public waiting area, then left. FAC ¶ 487.

Viewpoint discrimination exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)). Here, Dr. Bowden has not pled facts demonstrating it was her speech that caused Dr. Zaafran and the TMB to punish her. Nor has she pled facts demonstrating that their actions were taken to stifle her viewpoint. Instead, the FAC plainly alleges that Dr. Bowden was disciplined because her conduct violated state law. Plaintiffs' allegations against Dr. Zaafran are thin at best, and do not establish that Dr. Zaafran violated Dr. Bowden's constitutional rights.[5]

[5]Even so, the conduct alleged by Dr. Zaafran is objectively reasonable. *See Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998). Dr. Zaafran initiated disciplinary proceedings after receiving a complaint against Dr. Bowden. After Dr. Bowden was found to have violated the Texas Medical Practices Act, he

Accordingly, Dr. Zaafran is entitled to qualified immunity. This lawsuit is **DISMISSED with prejudice** against Dr. Zaafran in his individual capacity.

### D. Plaintiffs failed to state a plausible claim for relief against the FSMB Defendants.

The only cause of action asserted against the FSMB Defendants is Conspiracy to Discriminate Based on Viewpoint under Section 1983. FSMB is a private actor. To state a claim against FSMB for Section 1983 conspiracy, Plaintiffs must allege facts establishing that FSMB "engaged in a conspiracy with state actors to violate [Plaintiffs'] constitutional rights." *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008). This requires showing the existence of "an agreement between the ... defendants to commit an illegal act" and "an actual deprivation of constitutional rights." *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (citation omitted). Plaintiffs must "allege specific facts to show an agreement." *Tebo*, 550 F.3d at 496 (citing *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004)). "A conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Terwilliger*, 4 F.4th at 285 (citing *Twombly*, 550 U.S.at 557); *see Jabary v. City of Allen*, 547 F. App'x 600, 611 (5th Cir. 2013) (failure to plead the "times, places, and other circumstances" of meetings where agreement was formed resulted in dismissal).

The "conspiracy" Plaintiffs plead is the Medical Board Defendants' implementation and enforcement of policies that FSMB proposed and promulgated. Because the Medical Board Defendants "agreed to implement" FSMB's "Censorship Statement," "Censorship Policy," and "predecessor censorship agreements," the Physician Plaintiffs allege the FSMB suppressed their speech. FAC ¶¶ 537–38. Plaintiffs allege that, "acting upon agreements with the FSMB," state licensing authorities disciplined them for conveying medical information that dissented from prevailing consensus. FAC ¶ 15.

---

spoke at Dr. Bowden's reprimand hearing as president of the Texas Medical Board.

Apart from those broad assertions, the most specific allegations of any agreement between FSMB and the Medical Board Defendants are as follows: First, Plaintiffs allege that members of FSMB national leadership "agreed at the FSMB national headquarters in Euless, Texas that the FSMB would pressure" medical boards to discipline physicians for writing medical exemptions from childhood vaccinations. FAC ¶ 310. Second, around December 11, 2020, FSMB's leadership in Euless communicated to FSMB's member medical boards that physicians who cast doubt on vaccines should be disciplined, and the medical boards "agreed to do so." FAC ¶ 315. Third, the FAC alleges that FSMB "demanded" the Rhode Island Defendants discipline Dr. Brody after learning of his newsletter conveying his stance on COVID-19 vaccines, and those Defendants "agreed to do so." FAC ¶ 324.

Plaintiffs' allegations of an agreement to violate their constitutional rights are conclusory, and far reaching at that. Plaintiffs attempt to infer an agreement between the FSMB and the state medical boards by the mere fact of the Medical Board Defendants' membership in FSMB. The fact that FSMB promulgated standards that its member medical boards chose to implement is by no means indicative of an "agreement" to violate Plaintiffs' constitutional rights.

And the more specific allegations of an agreement are devoid of any detail that might demonstrate the existence of a conspiracy. For instance, Plaintiffs allege that Defendant Kirchmeyer and "other [unnamed] members" of FSMB leadership entered into an agreement in Euless, Texas to discipline some physicians (FAC ¶ 310), FSMB's leadership communicated on December 11, 2020 that physicians who cast doubt on COVID-19 vaccines should be disciplined (FAC ¶ 315), and the Rhode Island Defendants agreed to discipline Dr. Brody at FSMB's demand (FAC ¶ 324). These allegations do not indicate what conversations occurred, when, between whom, or what was said to reach an agreement to suppress Plaintiffs' speech. Absent this information, such allegations are not enough to state a claim for conspiracy. *See Jabary v. City of Allen*, 547 F. App'x at 611.

The Medical Board Defendants' implementation of FSMB's policies is not enough to establish an agreement between them to violate

Plaintiffs' constitutional rights. FSMB took a stance on COVID-19 issues, and its member medical boards adopted its position. It was those member medical boards that disciplined the Physician Plaintiffs for violating their respective state laws. Just by stating that this was a concerted effort to suppress Plaintiffs' speech does not mean it was. Any allegations of an agreement between FSMB and the Medical Board Defendants are conclusory at best. "Without more background facts," Plaintiffs cannot demonstrate the existence of an agreement to the "level of plausibility necessary to pass scrutiny under Rule 12(b)(6)." *Jabary*, 547 F. App'x at 611.

By omitting crucial details surrounding the circumstances of any alleged "agreement" entered into between FSMB and the Medical Board Defendants, Plaintiffs have failed to state a claim for Section 1983 conspiracy. Accordingly, this lawsuit is **DISMISSED with prejudice** against the FSMB Defendants.

## CONCLUSION

For the reasons stated above, the Court **ORDERS** that:

- The Massachusetts Defendants' Motion to Dismiss (ECF No. 115) is **GRANTED**. The claims against the Massachusetts Board of Registration in Medicine and Julian Robinson are **DISMISSED without prejudice.**
- The Rhode Island Defendants' Motion to Dismiss (ECF No. 118) is **GRANTED**. The claims against the Rhode Island Board of Medical Licensure and Discipline and Nicole Alexander-Scott are **DISMISSED without prejudice.**
- The New York Defendants' Motion to Dismiss (ECF No. 121) is **GRANTED**. The claims against the New York State Board for Professional Conduct and Andrew Merritt are **DISMISSED without prejudice.**
- The Indiana Defendants' Motion to Dismiss (ECF No. 123) is **GRANTED**. The claims against the Medical Licensing Board of Indiana and John Strobel are **DISMISSED without prejudice.**

- The Texas Defendants' Motion to Dismiss (ECF No. 126) is **GRANTED**. The claims against the Texas Medical Board and Sherif Zaafran in his official capacity are **DISMISSED without prejudice.** The claims against Sherif Zaafran in his individual capacity are **DISMISSED with prejudice.**
- The Washington Defendants' Motion to Dismiss (ECF No. 128) is **GRANTED**. The claims against the Washington Medical Commission and Claire Trescott are **DISMISSED without prejudice.**
- The California Defendants' Motion to Dismiss (ECF No. 131) is **GRANTED**. The claims against the Medical Board of California, Kimberly Kirchmeyer, and Charity Dean are **DISMISSED without prejudice.**
- The FSMB Defendants' Motion to Dismiss (ECF No. 134) is **GRANTED**. The claims against Federation of State Medical Boards, Katie Templeton, and Kenneth Simon are **DISMISSED with prejudice.**

**SO ORDERED** on this **28th day of October 2026.**



Mark T. Pittman
UNITED STATES DISTRICT JUDGE